STATE of Minnesota, Respondent,

v.

William G. FORD, Appellant.

No. 81–590.

Supreme Court of Minnesota.

Aug. 6, 1982.

C. Paul Jones, Public Defender, and Margaret G. LaMarche, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief Asst. County Atty., Appellate Division, Thomas A. Weist and Rick Osborne, Asst. County Attys., Minneapolis, for respondent.

KELLEY, Justice.

Defendant was charged in district court with attempted aggravated robbery and conspiracy to commit aggravated robbery, Minn.Stat. §§ 609.05, 609.11, 609.17, 609.-175, and 609.245 (1980). A district court jury found defendant guilty of the conspiracy charge and not guilty of the attempt charge. The trial court sentenced defendant to 48.5 months, to be served consecutively to any other sentence defendant was

serving.[1] On appeal from judgment of conviction and from the order denying his motion for a new trial, defendant raises issues of (1) whether the evidence of his guilt was insufficient, (2) whether he was denied a fair trial by (a) the trial court's refusal to order disclosure of the identity of the informant or (b) the trial court's admission of evidence of the contents of a tip by the informant to police, and (3) whether consecutive sentencing was improper. We affirm.

On the evening of October 21, 1980, police received a call from a reliable informant indicating that defendant and one Ernest Randel were planning on robbing the North Drug Store in Robbinsdale and that the robbery would occur in the next few days, possibly in the morning. Early the following morning police undercover agents took the place of employees in the store, and other officers driving unmarked cars put the store under surveillance. A short time later the surveillance team observed a car driven by a white man, Robert Davis, and containing two blacks, defendant and Randel, circle the store suspiciously a number of times, then park. Defendant and Randel then walked around the exterior of the store before reentering the car. The car then drove to south Minneapolis, where defendant picked up his brother, Daniel. While following this car back to the store police observed defendant pass a leather case from the front seat to Randel in the back seat.

The car circled the store again before letting defendant and his brother out. Defendant and his brother were arrested after they entered the store and asked to use the telephone. Neither was armed. Davis and Randel were arrested in the car. Randel had a glove in his pocket and a search of the leather case resulted in the discovery of two loaded revolvers, another glove, fabric tape suitable for tying the hands of people, and a carpet knife suitable for cutting fabric tape.

At defendant's trial the court refused to order the prosecutor to disclose the informant's identity and allowed the state to present evidence of the contents of the informant's tip to police the night before the arrests. Davis, who turned state's evidence, testified that his estranged wife introduced him to defendant on the 20th. On the 21st, when Davis was babysitting with the children while his wife was out with defendant, Davis received a call from defendant asking if he would give defendant a ride in the morning. Davis testified that the following morning defendant and Randel appeared at his wife's house and that his wife was prepared to give them a ride to the drug store. Davis volunteered to drive instead. He testified that it was during this drive that defendant and Randel, who were casing the store, tried to persuade him to participate in the robbery. Davis testified that when he refused, defendant asked him to drive to south Minneapolis so that he could pick up his brother. Davis testified that it was his impression that defendant and the brother entered the store not to commit the robbery at that time but to make a phone call and case the interior.

■ 1. Defendant's contention that the evidence was insufficient to support his conviction of conspiracy to rob is without merit. The evidence established both that defendant conspired with another to rob the store and that defendant committed overt acts (arming himself, seeking another confederate, and casing the store) in furtherance of the conspiracy.

2. Defendant's contention that he was denied a fair trial is based on (a) the trial court's refusal to order disclosure of the informant's identity and (b) the trial court's admission of the contents of the tip.

■ (a) Our decision in *Syrovatka v. State*, 278 N.W.2d 558 (Minn.1979), contains a detailed summary and analysis of the

1. The presumptive sentence for aggravated robbery (severity level VII) is 97 months when committed by one such as defendant (who had a criminal history score of six). The presumptive sentence duration for conspiracy to commit aggravated robbery is one half the presumptive sentence duration for aggravated robbery. Minnesota Sentencing Guidelines & Commentary, II.G. (1981).

governmental privilege relating to the identity of informants in the context of a criminal trial. As we stated there, a trial court should consider a number of factors in determining whether disclosure is necessary to a fair determination of the defendant's guilt including: whether the informant was a material witness; whether the informer's testimony will be material to the issue of guilt; whether the state's evidence is suspect; and whether the informant's testimony might disclose entrapment. The defendant has the ultimate burden of establishing the need for the disclosure of the informant's identity. If the defendant fails to meet this burden but is able to establish a basis for inquiry by the court, then the court should hold an *in camera* hearing to consider affidavits or to interview the informant in person. If the court orders disclosure the state, if it wants to proceed, must disclose the informant's identity and make a reasonable effort to procure his attendance.

■ In this case defendant failed to make a sufficient showing of the need for disclosure of the informant's identity or an *in camera* hearing on the issue. The evidence which the state used to convict the defendant was the testimony of the officers concerning the casing of the store, the arrests, the searches, and the testimony of Robert Davis concerning what defendant said late on the evening of the 21st and what defendant said and did on the 22nd. That evidence, which was subject to testing by cross-examination, overwhelmingly established the elements of the offense of conspiracy. The record establishes that the informant was not Davis, Randel or defendant's brother, and that the informant was not a witness to any of the events which occurred on the 22nd and on which the state relied in establishing defendant's guilt. That the informant may have been involved in some way early in the conspiracy, either as a participant or as a witness, does not mean that the informant's testimony was material to the defense. Defense counsel stated that he thought that the informant was Davis' wife and suggested that maybe she framed defendant. However, this was mere speculation on the part of defense counsel and was not supported by any testimony by defendant or other evidence. Defense counsel's speculations are particularly unpersuasive when considered in the context of the overwhelming evidence presented by the state showing that defendant was not the victim of a setup but was an active willing participant in the planning of the robbery and in the casing of the store. Among the cases supporting our decision, see *United States v. Anderson*, 627 F.2d 161 (8th Cir. 1980), *cert. denied*, 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980), and *United States v. Moreno*, 588 F.2d 490 (5th Cir. 1979).

(b) Defendant's contention that he was denied a fair trial is also based on his claim that the trial court erred in admitting evidence of the contents of the informant's tip to the police. In responding to defendant's claim, the state points out that the trial court admitted the evidence only to explain why the police put the drug store under surveillance and not to establish the truth of the contents of the statement.

In support of the trial court's approach, the state points to our decision in *State v. Schifsky*, 243 Minn. 533, 69 N.W.2d 89 (1955). In *Schifsky* the defendant's wife called the police and told them that defendant had threatened to shoot her and that he still had the gun. The police went to the residence in question and, after talking outside to the wife, who repeated what she had earlier reported, entered the premises and tried to talk with defendant, who fired at them. In the trial for assaulting one of the officers defendant claimed the marital privilege, but the state was permitted to show the contents of the wife's statements in her call to the police and in talking with the police at the scene. Upholding the trial court's ruling, this court, with respect to the hearsay issue, stated that the evidence was not admissible to prove that defendant had a gun or had threatened to shoot his wife but to show that the police had reasonable cause to enter the premises without a warrant.

Our case is distinguishable from *Schifsky.* In *Schifsky* the contents of the extrajudicial statement of the wife focused on the defendant's threat to shoot her, whereas the defendant was on trial for assaulting a police officer. In the instant case, the contents of the informant's tip focused on the conspiracy of defendant and Randel to rob the store, and defendant was on trial for that very conspiracy.

■ We agree that the trial court was justified in allowing evidence that the police had received a tip, because the evidence was needed to explain the action of the police in putting the store under such extensive surveillance. The definition of "hearsay" in Minn.R.Evid. 801(c) (1980) justified, by negative inference, admission for this purpose of evidence that a tip was received. That rule defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" *id.* When evidence that a tip was received is offered to explain why police have established surveillance of the scene of an expected crime, the evidence is not hearsay.

■ However, under Minn.R.Evid. 403 (1980), the trial court has authority to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Here it was not necessary for the jury to hear the contents of the tip, which pointed directly to defendant's guilt of the crime of conspiracy to rob. The risk that the jury would consider the contents as substantive evidence of defendant's guilt was significant. Since the proper purpose of admitting evidence of the tip, explaining the police conduct, could have been accomplished without informing the jury of the entire contents of the tip, we believe that the trial court should have limited the admission of the evidence accordingly. *See United States v. Gomez,* 529 F.2d 412 (5th Cir. 1976). *See also* 4 B. Louisell & C. Mueller, Federal Evidence § 417 at 112 (1980); 4 J. Weinstein & M. Berger, Weinstein's Evidence § 801(c)[01] at 801–72 (1981); and McCormick, Evidence

§ 248 at 587 (2d ed. 1972). However, we do not believe that defendant was prejudiced by the admission of the contents of the tip in this case, in view of the trial court's cautionary instruction to the jury in the final instructions and in view of the overwhelming evidence of guilt. *See United States v. Gomez,* 529 F.2d 412 (5th Cir. 1976). Defendant's contention that the trial court's cautionary instruction was inadequate and his contention that the trial court also should have given the cautionary instruction at the time the evidence was received are contentions which were not raised in the trial court, and therefore defendant is deemed to have forfeited his right to have them considered on appeal. However, we note that, at least when requested, the better practice is to caution the jury concerning such evidence at the time it is received, not just as part of the final instructions.

■ 3. Defendant's final contention relates to the propriety of consecutive sentencing.

Minnesota Sentencing Guidelines & Commentary, II.F. (1981), provides that, absent aggravating circumstances justifying consecutive sentencing, consecutive sentencing is permitted in only three situations:

1. When a prior felony sentence for a crime against a person has not expired or been discharged and one or more of the current felony convictions is for a crime against a person, and when the sentence for the most severe current conviction is executed according to the guidelines; *or*

2. When the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines; *or*

3. When the conviction is for escape from lawful custody, as defined in Minn.Stat. § 609.485.

While defendant was not convicted of attempted aggravated robbery but only conspiracy to commit aggravated robbery,

we believe that the latter offense is in the nature of an offense against the person and that therefore this case falls in category 1 above. Our decision in *State v. Flynn*, 313 N.W.2d 389 (Minn.1981), supports this reasoning. There we upheld consecutive sentencing under category 3, even though the sentence was for attempted escape rather than escape. In so doing we stated, "Although defendant's conviction was for attempted escape, we believe that the reasoning behind consecutive sentencing for escape also fits attempted escape." 313 N.W.2d at 390.

Affirmed.