**STATE of Minnesota, Respondent,**

v.

**Mary MOORE, Appellant.**

**No. C0-83-854.**

Supreme Court of Minnesota.

Dec. 2, 1983.

---

C. Paul Jones, State Public Defender, Mollie G. Raskind, Deputy State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Richard T. Rodenberg, Brown County Atty., New Ulm, for respondent.

AMDAHL, Chief Justice.

This is a sentencing appeal.

Defendant, while employed as a secretary in a law office in New Ulm, forged and cashed a large number of checks in the amount of $39,596.27 over a 4-year period. After the forgeries were discovered, defendant was charged with eight counts of aggravated forgery, Minn.Stat. § 609.625, subd. 1 (1982), based on separate acts of forgery occurring on eight different dates in February, March and April of 1982 (checks totaling $2,608.35).

At the omnibus hearing defendant's trial attorney moved for an order consolidating the eight counts of aggravated forgery into one count of theft or for an order to the effect that all defendant's conduct was unitary under Minn.Stat. § 609.035 (1982). The trial court denied the motion.

Subsequently, defendant entered guilty pleas to all eight counts, agreeing to be held responsible for restitution in the amount of $39,596.27, in exchange for the prosecutor's agreeing to remain silent at sentencing and agreeing not to charge defendant with any other offenses on the basis of the series of forgeries and theft.

In computing defendant's criminal history score, the trial court used the so-called Hernandez method—see State v. Hernandez, 311 N.W.2d 478 (Minn.1981), and Minnesota Sentencing Guidelines and Commentary II.B.101 (1982)—giving defendant one point for the first count, two for the second count, etc., resulting in the maximum permissible criminal history score (six or more). Seven of the eight offenses involved checks in an amount between $150 and $2,500; those offenses were severity level II offenses; the other offense was a severity level I offense. A presumptive sentence for a severity level II offense by a person with a criminal history of six or more is an executed term of 27 (25–29) months in prison. The trial court refused to depart and place defendant on probation. The court sentenced her on counts seven and eight to concurrent executed 27-month prison terms. On the other counts the court stayed imposition and placed defendant on deferred probation. The court ordered that the probation for counts one and two be concurrent, counts three and four concurrent, and counts five and six concurrent, with each group running consecutively to each other group, making a total of up to 30 years of probation. The court also ordered defendant to make restitution in the amount of $39,596 at $110 per month.

On appeal defendant makes a number of related arguments, including that the sentence she received is unjustifiably disparate with the sentence given other offenders similarly situated and that the court erred in refusing to depart dispositionally from the presumptive sentence. She seeks to have her sentence computed on the basis of a maximum of two criminal history points with a double durational departure but no dispositional departure—in other words, a stayed sentence of 28 (14 × 2) months in prison. Alternatively, she seeks a modification of her executed sentence to probation. In either event, she wants restitution limited to $2,608.35. Failing a modification of her sentence to a probationary term, she requests permission to refuse the probationary terms for counts one through six, with the executed terms running concurrently with the other two executed sentences.

We start with the proposition that the eight offenses were not part of a single behavioral incident under Minn.Stat. § 609.035 (1982). *State v. Eaton,* 292 N.W.2d 260, 266, 267 (Minn.1980).

Whether the trial court correctly calculated defendant's criminal history score is a related issue. The *Hernandez* case involved the sentencing of a defendant on one day for three separate offenses which were not part of a single behavioral incident or course of conduct and which occurred at different times and involved different victims. We held that it was proper to count the defendant's first two convictions in determining the appropriate sentence for the third conviction, pointing to two sets of circumstances:

> (a) the fact that the three convictions were for separate and distinct offenses which were not part of a single behavioral incident or course of conduct and which did not involve the same victims, and (b) the fact that there is no indication that the trial court was trying to manipulate the Guidelines to achieve a substantive result not intended by the Guidelines.

311 N.W.2d at 481. We added that "All the court was trying to do was avoid mere formalities and, in the interests of judicial economy, do in one day what the Guidelines allow to be done in three or more days." 311 N.W.2d at 481.

The general approach of the Guidelines is to give the defendant one criminal history point per prior felony if defendant was sentenced for the prior felony. Minnesota Guidelines and Commentary, II.B (1982). An amendment to Comment II.B.103., effective November 1, 1983, reads, "The two point limit in calculating criminal history when there are multiple felony sentences arising out of a single course of conduct with multiple victims also applies when such sentences are imposed on the same day." This amendment apparently reflects past commission policy of limiting the use of the *Hernandez* rule when it is used in the context of the multiple victim exception to section 609.035. Logically, there may be a strong argument for similarly limiting the use of the Hernandez rule in a case such as this where the multiple offenses were all committed against the same victim. In either case, the aim of the limitation would be to limit the effect of prosecutorial variability in charging practices.[1] However, whether or not such a limitation should be adopted is a decision which we believe should be left to the commission.

■ Although we therefore find no error in the trial court's use of the *Hernandez* method in computing defendant's criminal history score, we believe that the court exceeded its authority in ordering deferred probation and in making the terms of probation run consecutively, resulting in a total of up to 30 years of probation. The *Hernandez* method of applying a defendant's criminal history score may be used only when sentencing concurrently.[2] The court's use of this method therefore is deemed to constitute a choice by the court to sentence the defendant concurrently. The court's use of deferred probation and consecutive probationary terms is inconsistent with its decision to use the *Hernandez* rule.

■ We reject defendant's argument that the 27-month sentence which she received is unjustifiably disparate with the sentences given other offenders similarly situated. *State v. Vasquez,* 330 N.W.2d 110

1. This variability is rather dramatically illustrated by comparing this case with *State v. Lalli,* 338 N.W.2d 419 (Minn.1983). In *Lalli* the prosecutor moved at the sentencing hearing to have all six counts of bribery consolidated into one count and have the defendant sentenced for that one count of bribery. This prevented the use of the *Hernandez* method of computing the defendant's criminal history score.

2. When sentencing consecutively, the court must follow the procedure specified in section II.F. of the Guidelines. That is, "The presumptive duration for offenses sentenced consecutively is determined by locating the Sentencing Guidelines Grid so defined by the most severe offense and the offender's criminal history score and by adding to the duration shown therein the duration indicated for every other offense sentenced consecutively at their respective levels of severity but at the zero criminal history column on the Grid."

(Minn.1983). We also reject the contention that the court erred in refusing to depart dispositionally. As we indicated in *State v. Kindem,* 313 N.W.2d 6 (Minn.1981), we generally will not interfere with the trial court's discretionary decision not to depart from the presumptive sentence. In this case the trial court clearly did not abuse its discretion in refusing to depart dispositionally; in fact, there were grounds that arguably would have justified an upward durational departure if the trial court had so decided.[3]

■ Our decision in *State v. Randolph,* 316 N.W.2d 508 (Minn.1982), establishes a defendant's right to refuse probation and insist on execution of a stayed prison term. However, a refusal of probation by defendant will not affect her obligation to make full restitution, since her obligation to make restitution in this case stems from the theft of funds and the plea negotiation agreement to make restitution. *State v. Kennedy,* 327 N.W.2d 3 (Minn.1982).

Affirmed as modified.

WAHL, Justice (dissenting).

The result in this case is extremely harsh and, more than that, counterproductive to the achievement of certain stated purposes of the Sentencing Guidelines, such as equity in sentencing and the use of the least restrictive sanction necessary to achieve the purposes of a sentence. *State v. Garcia,* 302 N.W.2d 643, 646 (Minn.1981).

Defendant, a 40-year-old woman with a husband and two children, wrote unauthorized checks on her attorney-employer's account over an apparently unaudited 4-year period and obtained $39,596 before the theft was discovered. While her own family lived in a rented house in humble circumstances, she sent the money she wrongfully took to two brothers who terrified her. These brothers, who were harassing and pressuring her for money, had followed her and her family from Ohio to California, had beaten her badly in the past, and now threatened to come to New Ulm. Her irrational fear led to the criminal course of conduct, "to remorse, regret and sorrow," as she expressed it to the court, and to incarceration.

There are two victims in this case, the attorney, who doubtless had insurance to cover such a loss, and the defendant. With no prior criminal record, with no prior contact with the criminal justice system, Mary Moore was treated as a repeat offender, as a hardened criminal. In the exercise of his discretion, the prosecutor charged each of eight check forgeries within a 3-month period as a single behavioral incident of aggravated forgery, aggregating her criminal history score from zero to 7 in a single prosecution. He might have aggregated those eight checks into a single charge of theft over $2500, a severity level IV offense, with a single sentence. *See State v. Lalli,* 338 N.W.2d 419 (Minn.1983).

The trial court, even using the *Hernandez* method to arrive at a criminal history score of 6 or more, as the majority finds proper, could have departed dispositionally, under the facts and circumstances here involved and stayed imposition of sentence, equaliz-

---

**3.** Specifically, the defendant used a sophisticated scheme to steal the money, she took a large amount of money, she committed a number of thefts over a long period of time, and in committing the thefts she abused her position of trust. *See* Minnesota Sentencing Guidelines and Commentary, II.D.2.b.4 (1982).

The dissent quotes some of the language of the trial court at sentencing, with the quoted portion concluding, " * * * You did not personally get the money." The quotation is incomplete. The trial court, after making the quoted statement, continued, saying:

But, it would be a snare and a dangerous delusion to leave the analysis there. Legally, you were not under duress. You were 1,800 miles from the people who you didn't wish to have closer, but there were all kinds of remedies to which you could have resorted, and I am sure you recognize that now. It simply won't do to say that none of these funds that you took went for your own benefit. That simply stands logic on its head. It's true you didn't get the money to spend, but the reason you took it was precisely for your own benefit, to pay off people who otherwise you felt would come more approximate to your living arrangements than you wanted them. That simply defined the controlling benefit to you at the time you did this. * * *.

ing somewhat the disparity in charging. This the court refused to do, even though he noted, "This is not to say but what it's true you have no prior record. It's not to say but what you felt you were under duress. It's not to say but what, as your lawyer points out, you did not personally get the money." The court imposed a sentence of 27 months in prison, to be followed by 30 years on probation conditioned on total restitution of $39,596 at $110 per month.

We have held that the commission of a major economic offense justifies increasing the length of the prison term on conviction. *State v. Rott,* 313 N.W.2d 574, 575 (Minn. 1981). Mary Moore did commit a major economic offense. Even so, she should not be sentenced more harshly than others committing similar major economic offenses. Janet Bowley, a bookkeeper, stole over $28,000 by entering false totals in the daily cash register over a period of 19 months. *State v. Bowley,* 322 N.W.2d 610 (Minn.1982). She was convicted on one count of theft over $2500 and placed on straight probation for 10 years, with the requirement that she make restitution. Mary Moore was convicted of eight aggravated forgeries and sentenced to two concurrent executed sentences of 27 months and up to 30 years probation conditioned on full restitution of $39,596 at $110 per month.[1] Jacqueline Rott, with three prior misdemeanor theft-by-check convictions, stole between $1600 and $20,000, using false identifications in a check-writing scheme over a 5-month period. *State v. Rott.* Pleading guilty to five counts of theft by check over $150, she was sentenced to five concurrent 3-year prison terms, a departure from the 1 year and a day stayed presumptive sentence. We held that execution of sentence was justified because of the defendant's prior failure on probation but reduced the 3-year concurrent sentences durationally to 2 years or 24 months, a doubling of the presumptive sentence. Mary Moore, with no prior criminal history and no prior failures on probation,

was sentenced to prison for 27 months. There is no equity in sentencing here, nor is there any indication that incarceration is necessary to achieve the purpose of the sentence. Rather, the record demonstrates that Mary Moore, remorseful, working two jobs at the time of sentencing, will bend every effort to make restitution as she has agreed, although it appears that full restitution is more than she should be required to make in light of her slim resources, even though she is willing. If punishment is deemed necessary, she has been punished more than enough.

As we stated in *State v. Kraft,* 326 N.W.2d 840, 842 (Minn.1982), "We have the power, if circumstances warrant, to modify a sentence given by the trial court, even if the sentence is within the presumptive sentence range." We should exercise that power in this case by modifying the sentence given by the trial court to a probated sentence, give Mary Moore credit for time served and release her from prison.

---

1. The majority opinion strikes down the 30 years deferred probation but upholds full resti- tution.