**STATE of Minnesota, Respondent,**

v.

**Charles David PICKETT, Appellant.**

**No. C7–83–1676.**

Court of Appeals of Minnesota.

Jan. 25, 1984.

Phillip S. Resnick, Resnick & Bartsch, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Beverly J. Wolfe, Staff Atty., Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This is an appeal by a criminal defendant pursuant to Minn.Stat. § 244.11 (1982), from the trial court's refusal to depart dispositionally from the presumptive sentence and from the trial court's calculation of the sentence duration.

Pursuant to a plea negotiation, defendant pleaded guilty to five charges of criminal sexual conduct in the first degree, Minn. Stat. § 609.342(c) (1982). On July 26, 1983, a sentencing hearing was held. Defendant's counsel, defendant's father and defendant offered remarks. The court also had written recommendations from the court-appointed psychologist and defendant's licensed consulting psychologist. After adjudging defendant guilty of all five charges, the court imposed consecutive sentences of 43 months, 54 months, 65 months, 76 months, and 95 months respectively. Consolidated, the sentence imposed is 333 months. We affirm.

## FACTS

During 1982 and early 1983, Brooklyn Park, Brooklyn Center and New Hope suffered a series of rapes. The rapes were occurring during the early morning hours and in the garage area of apartment buildings. The victims reported that the rapist was wearing a dark ski mask with red trim around the openings and that he had threatened to hurt or kill them if they did not submit to him. The victims' general description of the rapist also matched, as did the zig-zag footprint police found in the snow at the scene of some of the rapes.

Because of the consistent pattern of the rapist's method of operation, the police departments of the three communities coordinated the investigation. Surveillance of apartment lots and garages during the late night and early morning hours was initiated. On February 9, 1983, a car cruising an apartment parking lot was stopped by a Brooklyn Park police officer. The driver of the car was the defendant, Charles Pickett. Mr. Pickett matched the general description provided by the victims. The tennis shoes he wore also matched the zig-zag patterned footprints found at some of the rape scenes.

Based on the stop and the information gathered therefrom, the police obtained an order permitting placement of an electronic tracking device on defendant's car. The defendant was seen following women to apartment complexes and their garage stalls before driving away. On March 9, 1983, the defendant observed the police placing a tracking device on the car he was then using. Having been discovered, the police arrested the defendant.

After being advised of his rights and the surveillance he had been under, defendant admitted committing ten rapes. The defendant went through the various rapes and without any specific information from the police officers, provided details that only the rapist would have known. Besides the address and approximate date of each rape, the defendant remembered: that a particular victim was wearing her Dairy Queen uniform; that another requested that he open the hatchback of her car because she suffered from claustrophobia; that he made a third remove her tampon before he raped her; that he made another remove her cowboy boots before he raped her; that two more victims each had a small child with them when he raped them and one had clutched her baby during the rape. The defendant also informed the police of the whereabouts of the jacket, ski mask, and tennis shoes he had worn during most of the rapes.

On March 11, 1983, three charges of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(c) (1982), were filed against defendant. Two additional charges were filed on March 15, 1983. Defendant was arraigned on April 20, 1983, and pled not guilty. Thereafter, defendant moved to suppress certain evidence, including his confession, and to dismiss the charges for lack of probable cause. The motion was denied on June 17, 1983.

On June 22, 1983, a plea negotiation was entered into. In exchange for defendant's plea of guilty to the five rape charges, the state agreed not to charge defendant with the other five rapes and to refrain from commenting at defendant's sentencing hearing. After examination of the defendant by the parties and the court, the court accepted defendant's guilty plea and sentenced him to an executed sentence of 333 months.

## ISSUES

1. Whether the trial court's refusal to depart dispositionally from the presumptive sentence of the Guidelines constitutes an abuse of discretion?

2. Whether increasing defendant's criminal history score for each conviction being sentenced and simultaneously ordering the sentences to run consecutively is inconsistent with the requirements of the Guidelines?

## ANALYSIS

On June 22, 1983, appellant pleaded guilty to five charges of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(c) (1982). On July 26, 1983, he was sentenced to the custody of the Commissioner of Corrections at the State Prison at Stillwater on all five convictions.

Criminal sexual conduct in the first degree rates a severity level VIII on the Minnesota Sentencing Guidelines Grid. The presumed disposition for conviction of a severity level VIII crime, regardless of the defendant's criminal history score, is prison. Appellant acknowledges this dispositional presumption of the Guidelines, but seeks a departure from the Guidelines based on his amenability to treatment.

Minnesota has recognized amenability to probation as a ground for dispositional departure. *State v. Bentley,* 329 N.W.2d 39, 40 (Minn.1983); *State v. Wright,* 310 N.W.2d 461, 462 (Minn.1981). In other cases, our court has stated that "a defendant's particular amenability to individualized treatment in a probationary setting will justify departure in the form of a stay of imposition or execution of a presumptively executed sentence." *State v. Hennessy,* 328 N.W.2d 442, 443 (Minn.1983); *State v. Clemmer,* 328 N.W.2d 739, 740 (Minn.1983).

■ Among the factors to be considered in determining the defendant's amenability to probation or treatment in a probationary setting are: his age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and family. *State v. Clemmer, supra.* The defendant in this case is 25 years old, has no prior criminal record, and over 50 letters from family and friends were submitted on his behalf. Additionally, his psychologist recommended the defendant be given every consideration for psychological or psychiatric treatment.

■ Aware of all of these facts, the trial judge sentenced defendant to prison time for all five convictions. As our Supreme Court reiterated in *State of Minnesota v. Back,* 341 N.W.2d 273 (Minn.1983):

> * * * ordinarily we will not interfere with a sentence that falls within the presumptive sentence range even if there are grounds that would justify departure. *See, e.g., State v. Abeyta,* 336 N.W.2d 264 (Minn.1983) (rejecting an argument that the trial court erred in refusing to depart dispositionally and place the defendant on probation). In *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981), we stated: Minn.Stat. § 244.11 (1980) permits the appeal in this case and we do not intend entirely to close the door on appeals from refusals to depart. However, we believe that it would be a rare case which would warrant reversal of the refusal to depart. As we stated in *State v. Garcia,* 302 N.W.2d 643, 647 (Minn. 1981), the Guidelines state that when substantial and compelling circumstances are present, the judge "may" depart. This means that the trial court has broad discretion and that we generally will not interfere with the exercise of that discretion.

*State of Minnesota v. Back,* 341 N.W.2d at 275.

■ We find that the trial court did not err in refusing to depart dispositionally. The facts indicating amenability to probationary treatment are neither substantial nor compelling. *See generally State v. Brusven,* 327 N.W.2d 591, 593 (Minn.1982). Additionally, the report of the court-appointed psychologist contains the following observations.

> Mr. Pickett does not deny the offenses but significantly minimizes both the degree of planning and the degree of force and/or threat used during the rapes. There is some feeling of remorse for his victims and a verbal condemnation of his actions. However, it is clear that his own self-interest is the more dominant feeling ("I didn't want to be in prison."). * * * Mr. Pickett must be considered a potentially dangerous man and should be treated as such. He has some potential to respond to treatment (in a secure setting) but will be a slow treatment case as he is very unaware of some of his motives. * * * He could be transferred to the St. Peter facility after a period of incarceration.

The trial court's decision to leave transfer of the defendant to a secured treatment facility in the hands of the Commissioner of Corrections was proper under these circumstances.

■ The trial court was also correct in ordering defendant's sentences to run consecutively. Defendant pleaded guilty to five separate charges of criminal sexual conduct in the first degree. The Guidelines specifically permit consecutive sentencing "[w]here the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines * * *." Minnesota Sentencing Guidelines and Commentary II.F.(2) (1982).

■ The trial court did err, however, in calculating the duration of defendant's presumptive sentence. The court should not have calculated defendant's criminal history score under the *Hernandez* method, *see State v. Hernandez,* 311 N.W.2d 478 (Minn.1981), and simultaneously imposed consecutive sentences. "The *Hernandez* method of applying a defendant's criminal history score may be used only when sentencing concurrently." *State of*

*Minnesota v. Moore*, 340 N.W.2d 671 at 673 (Minn.1983).[1]

When sentencing consecutively, the court must follow the procedure specified in section II.F of the Guidelines. That is, "The presumptive duration for offenses sentenced consecutively is determined by locating the Sentencing Guidelines Grid so defined by the most severe offense and the offender's criminal history score and by adding to the duration shown therein the duration indicated for every other offense sentenced consecutively at their respective levels of severity but at the zero criminal history column on the Grid."

*State of Minnesota v. Moore, supra* at 673 n. 2.

■■■ The most severe offense defendant has been convicted of is criminal sexual conduct in the first degree. The presumptive sentence for defendant's criminal history score, zero, is 43 months. The duration for each additional count "at the zero criminal history column on the Grid" is also 43 months. Defendant's total presumed sentence is therefore 215 months (5 × 43). The total sentence imposed by the trial court was 333 months, 118 months more than the maximum permitted absent aggravating circumstances justifying a departure.

We find such aggravating circumstances in the present case. *State v. Jones*, 328 N.W.2d 736 (Minn.1983), authorizes the court to approve an unintentional limited departure where there are aggravating circumstances. In two cases the defendant raped the victim in the presence of her small child. In both cases the child cried and the defendant threatened to hurt or kill the child if the victim did not quiet the child. These victims were not only subjected to an invasion of their person, but simultaneously to "psychological terror" for the safety of the child. *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981). And although the children were not technically victims of the crime, they were nonetheless victims. *See State v. Profit*, 323 N.W.2d

34, 36 (Minn.1982); *State v. Norton*, 328 N.W.2d 142, 146 & n. 2 (Minn.1982).

Additionally, the defendant randomly selected innocent women of three communities and stalked them to the garage area of their homes. After the victims had pulled into their garages, the defendant raped them. By raping his victims in their garages, defendant did not just invade his victims sexually but also invaded the zone of privacy surrounding and including their homes. As a result, these victims have to contend psychologically not only with the fact that they were raped but also with the fact that the area surrounding their homes is not the island of security they perhaps thought it was. *State v. Van Gorden*, 326 N.W.2d 633, 635 (Minn.1982); *State v. Morales*, 324 N.W.2d 374, 377 (Minn.1982).

These aggravating circumstances would have permitted a durational departure. The trial court's sentence of 333 months is less than the 430 (215 × 2) months that could have been imposed. Imposition of a 333 month sentence is clearly justified.

Affirmed.

1. The issue had not been addressed at the time    of defendant's sentencing.