**STATE of Minnesota, Respondent,**

v.

**MEDIBUS–HELPMOBILE, INC.,
et al., Appellants.**

**No. C7–91–475.**

Court of Appeals of Minnesota.

Feb. 11, 1992.

Review Denied March 19, 1992.

Hubert H. Humphrey, III, Atty. Gen., Janet A. Newberg, Asst. Atty. Gen., Mamie S. Segall, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Andrew S. Birrell, Sean M. Quinn, Meshbesher, Birrell & Dunlap, Minneapolis, for appellants.

Considered and decided by SHORT, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

SCHUMACHER, Judge.

This appeal is from judgments of conviction and sentences for theft by false representation. Minn.Stat. § 609.52, subd. 2(3) (1990); *see also* Minn.Stat. § 609.52, subd. 3(5) (1990). We affirm in part, reverse in part and remand.

## FACTS

Appellants were charged with theft by false representation for billing insurers—Medicare, Medicaid and Blue Cross Blue Shield—for basic life support (BLS) ambulance service for transporting kidney dialysis patients to and from dialysis. Appellant Bill Olsen is the president and co-owner of Medibus; appellant Bruce Rivers is the other co-owner; and Janet Sachs, who was acquitted of all charges, is the

office manager. The corporation was also charged.

The state alleged that Medibus had billed Medicare and the other insurers for BLS although it was not "medically necessary." The allowed rate for BLS transport was $65 each way plus $2 per mile. The state alleged that "special transportation" would have sufficed for these patients, many of whom required wheelchairs. Medicare would not cover *any* costs of "special transportation." The state Medicaid program reimbursed for such transportation at a rate of $16 each way and $1 per mile.

Appellant Olsen solicited doctors letters, detailing the patients' diagnoses and purporting to justify BLS transport, from the offices of the doctors treating the patients. These letters varied greatly in content, some stating that the patient needed to be transported in a "supine" position, or needed monitoring by an attendant, or needed transportation "with life support equipment." The state introduced testimony that the critical language in most of these letters was dictated to various medical secretaries by Olsen himself. Many of the letters were then signature stamped, without review by a physician.

The state called an expert witness, Dr. Mark Paller, who testified that dialysis patients are not at any greater medical risk during the time immediately before or after dialysis. Dr. Paller testified the medical conditions cited in the doctors' letters did not pose such a risk. In general, the treating physicians testified that BLS transportation was not medically necessary for their dialysis patients. Moreover, the state presented testimony from head nurses of dialysis units stating that they did not discharge patients who were experiencing problems, or were not sufficiently stable to go home.

On its Medicare claims forms, Medibus used an "H" code, which represented that the patient was "bed-confined before and after transportation." However, Medibus drivers and attendants testified that very few of the 24 patients involved in the offenses charged were ever in such a condition when transported. Nevertheless, Medibus employees involved in billing were told to routinely place the "H" code on Medicare claim forms. The state also presented testimony that the 24 dialysis patients almost never required a stretcher, and that some were transported in "wheelchair" vans not licensed or equipped to provide BLS service.

The investigation of Medibus began with phone calls from informants in July and August of 1988, leading to a WCCO–TV I–Team investigation. The defense moved for disclosure of the names of the (two) informants, known to be Medibus employees or former employees. The trial court ordered these names disclosed for *in camera* review, but thereafter denied disclosure to the defense.

The defense also sought videotapes, audiotapes and transcripts of interviews made by WCCO–TV. The station opposed this request on First Amendment grounds. The trial court ordered the materials produced for *in camera* review, the court to "review the materials requested if the individual subject is called as a witness."

Appellants Medibus, Olsen and Rivers were represented at trial by the same attorneys. Prior to the trial, the court questioned both Olsen and Rivers about their knowledge of the risks of joint representation and their waiver of the right to separate counsel. The trial court allowed joint representation.

The trial court excluded two documents which the defense argued were relevant to intent: 1) a letter from Wayne Arrowood, a Minnesota Department of Health official involved in ambulance regulation; and 2) the transcript of a telephone call between Olsen and Department of Human Services investigator Ron Nail.

Appellants were found guilty of seven counts of theft, aggregated over 6–month intervals, with each theft, except two of the counts, being over $35,000. By special verdict, the jury found that the theft on Count VII was between $250 and $2,500, and the theft on Count I between $2,500 and $35,-000.

The trial court imposed concurrent stayed sentences on the first three counts. On Count IV, the court imposed an executed sentence of 34 months. On Count V, concurrent with Count IV, the court sentenced Olsen and Rivers to 44 months, with 36 months executed and 8 months stayed. Counts VI and VII were both stayed sentences, made concurrent to each other but consecutive to the sentence imposed for Count V. The court placed both Rivers and Olsen on probation for 10 years, with $200,000 restitution as a condition of probation. The court fined Medibus $290,000.

## ISSUES

1. Are the convictions supported by the evidence?

2. Did the trial court elicit adequate waivers of the right to separate counsel?

3. Were appellants denied their rights to confrontation and to present a defense?

4. Should this court review records reviewed *in camera* but not disclosed to appellants?

5. Did the trial court err in sentencing appellants?

6. Should portions of the reply brief be stricken?

## ANALYSIS

*1. Sufficiency of the evidence*

█ In reviewing the sufficiency of the evidence to support a criminal conviction, this court must assume the jury believed the state's witnesses and disbelieved contrary evidence. *State v. Buchanan*, 431 N.W.2d 542, 547 (Minn.1988). The court must view the evidence and any reasonable inferences that could be drawn from it in the light most favorable to the state, and determine whether the jury could reasonably find the defendant(s) guilty beyond a reasonable doubt. *Id.*

█ The state presented sufficient evidence to prove that BLS transportation was not "medically necessary," as represented by Medibus in submitting claims for payment. The state presented evidence that the 24 dialysis patients were not "bed-confined" as represented in the claims forms. This court must assume the jury disbelieved defense testimony that use of the "H" code was specifically "cleared" with the Medicare claims office. *See Buchanan*, 431 N.W.2d at 547. The doctors' letters, given the manner in which they were solicited by Medibus, could not by themselves justify BLS service. *Cf. Goodman v. Sullivan*, 712 F.Supp. 334, 338 (S.D.N.Y.1989) (government may deny a Medicare claim even though a physician has concluded the treatment was medically necessary).

█ The state's proof of intent to defraud is also sufficient to support the convictions. Appellants cannot claim they relied on the doctors' letters, so as to negate intent, because they were the main source of the language in the letters. *Cf. American Ambulance Service v. Sullivan*, 911 F.2d 901, 909 (3rd Cir.1990) (provider of ambulance service to dialysis patients argued that, based on doctor certification, it reasonably expected Medicare claim to be paid and should not have to repay government).

Proof of intent is adequately supplied by circumstances indicating Medibus' intent to defraud Medicare and the other insurers. *See generally State v. Andrews*, 388 N.W.2d 723, 728–9 (Minn.1986) (intent must generally be proved by inferences drawn from a person's words and actions in light of surrounding circumstances). These include: 1) Medibus' policy of waiving the 20% co-payment that would have been charged to the individual non-Medicaid patients; 2) the transportation of some patients in wheelchair vans in which BLS could not have been provided; and 3) the response to employees who questioned the policy of BLS transport for dialysis patients.

█ Appellant Medibus contends that corporate criminal liability should not be imposed because the criminal acts alleged were solely the acts of the co-owners Olsen and Rivers. We decline to apply the language of *State v. Christy Pontiac–GMC, Inc.*, 354 N.W.2d 17, 21 (Minn.1984) to this

case. In *Christy Pontiac*, the state's prosecution of the owner for theft and forgery "failed for lack of evidence." *Id.* The supreme court did not apply the proposed rule [1] to the facts before it. We believe the jury here could also have found Medibus guilty while finding at least one of the co-owners not guilty.

### 2. Joint representation

Appellants argue that the trial court did not elicit an adequate waiver of their right to be represented by separate counsel.

 When two or more defendants are to be jointly tried and are represented by the same attorney, the court must address them individually concerning the dangers of joint representation and elicit a waiver of the right to be represented by separate counsel. Minn.R.Crim.P. 17.03, subd. 5; *see State v. Olsen*, 258 N.W.2d 898, 906–7 (Minn.1977).

 The trial court engaged in lengthy separate colloquies with Olsen and Rivers concerning the dangers of dual representation. This inquiry was adequate to inform appellants of the dangers of joint representation, and elicited narrative responses to the court's concerns. *See Olsen*, 258 N.W.2d at 907; Minn.R.Crim.P. 17.03, subd. 5(2). The trial court's inquiry covers 17 pages of the transcript, and cannot be judged based on individual responses. Because a satisfactory inquiry is shown, we need not inquire into whether a prejudicial conflict of interest existed. *Olsen*, 258 N.W.2d at 907–08. Furthermore, we conclude that the corporation's defense was not prejudiced by any conflict of interest; therefore, we need not address whether, or by what means, a corporate waiver could be obtained.

### 3. Rights to confrontation and to present evidence

Appellants Medibus and Olsen contend they were denied their right of confrontation when the court allowed the statements of Rivers to be admitted into evidence against Medibus and Olsen. All three appellants argue the court denied their right to present evidence by excluding the Arrowood letter and the transcript of the Olsen call to investigator Ron Nail. They also argue that their right to confrontation was infringed because the trial court denied disclosure of the informants' identities.

### a. Rivers statement

 There was no objection to investigator Anderson's testimony as to the statement made by Rivers. *See Stephens v. State*, 369 N.W.2d 603, 605 (Minn.App. 1985) (claim of denial of right of confrontation by admission of accomplice's statement was waived by failure to object). Moreover, Rivers' statement, which was wholly consistent with the defense at trial, did not prejudice his co-defendants. *See State v. Blue*, 327 N.W.2d 7, 11 (Minn.1982).

### b. Exclusion of defense exhibits

 A criminal defendant's right to present evidence in his defense is limited by the rules of evidence, and there is no right to present irrelevant evidence. *State v. Svoboda*, 331 N.W.2d 772, 775 (Minn. 1983). A trial court has wide discretion in matters concerning the relevancy of evidence. *State v. Swain*, 269 N.W.2d 707, 714 (Minn.1978). As neither the Arrowood letter nor the Nail–Olsen transcript related directly to the charges involving the dialysis patients, we cannot say the trial court abused its discretion. Moreover, the fact that Olsen sought the advice of regulators, which the defense argued was exculpatory on the issue of intent, was adequately brought out in both instances. The substance of the Arrowood letter was also testified to by both Arrowood and Olsen. Any error in excluding the evidence was clearly harmless.

### c. Disclosure of informants' identities

The trial court, after an *in camera* review of relevant documents, denied appel-

---

**1.** The supreme court suggested it may be fundamentally unfair to prosecute both the corporation and the owner "where the corporation is the alter ego of its owner and it is the owner who alone commits the crime * * *." *Christy Pontiac*, 354 N.W.2d at 21.

lants' request for disclosure of the informants' identities. It is assumed by both appellant and the state that the informants, Medibus employees or former employees, actually testified at trial.

 The case law on informant disclosure generally assumes that disclosure is necessary in order to obtain the informant's testimony at trial. *See e.g. State v. Ford*, 322 N.W.2d 611, 614 (Minn.1982) (relevant consideration in ordering disclosure is whether informant's testimony would be material). The case for disclosure is strengthened if the informant was a "participant" in, and an eyewitness to, the crime. *Syrovatka v. State*, 278 N.W.2d 558, 561–2 (Minn.1979). The degree of the informant's participation, however, is far less relevant if the purpose of disclosure is to provide impeachment by bias, not to facilitate entrapment defense. We conclude the trial court did not err in denying disclosure, particularly where the alleged employee bias was presented by other means, including evidence of a party employees held after the execution of the search warrant.

### 4. Review of in camera records

 Appellants contend the trial court may have erred in denying disclosure of some of the *in camera* records. Appellants urge this court to review these materials to determine whether any relevant evidence was not disclosed.

The trial court in its order indicated a decision as to the I–Team interview material would be made as each government witness involved was called to testify. Defense counsel, however, did not raise the disclosure issue as individual witnesses completed their direct examination, except with respect to one witness. The court noted it had reviewed the videotapes of Dr. Brown's statements and found them not disclosable, and was returning them to counsel for WCCO–TV.

None of the *in camera* materials are in the trial court record transmitted on appeal. Appellants, who receive a copy of the index of documents transmitted on appeal, are responsible for providing a record adequate for review. *State v. Anderson*, 351 N.W.2d 1, 2 (Minn.1984). Given their failure to preserve the disclosure issue during trial, and to object to return of the material, appellants have forfeited their claim to appellate review.

### 5. Sentencing issues

 Olsen and Rivers contend the trial court erred in imposing sentence on all seven counts because they constituted a single behavioral incident. *See* Minn.Stat. § 609.035 (1990). They also argue the court improperly used *Hernandez* sentencing and erroneously calculated the sentences for some counts. Medibus argues the court improperly calculated the fine against it, and Olsen and Rivers contend the restitution ordered is unclear.

Medibus, Olsen and Rivers were each convicted of seven separate counts which aggregated the billings made in 6–month intervals. Appellants' argument that their conduct constituted a single behavioral incident is not supported by case law. *See e.g. State v. Moore*, 340 N.W.2d 671, 673 (Minn. 1983) (eight forgeries by employee over four-year period were not a single behavioral incident); *State v. Eaton*, 292 N.W.2d 260, 267 (Minn.1980) (swindle). Making deceptive billings a continuing business practice does not transform them into a single behavioral incident. *See State v. Chidester*, 380 N.W.2d 595, 598 (Minn.App.1986) *pet. for rev. denied* (Minn. Mar. 21, 1986) (conduct arising out of a single criminal goal, such as swindling or stealing as much as possible is not a single incident).

 The trial court imposed seven concurrent and consecutive sentences, two executed and the rest stayed, on both Olsen and Rivers. The trial court used *Hernandez* sentencing, increasing the criminal history score for each successive count on which sentence was imposed. The state concedes the trial court erred in making the last two counts consecutive while sentencing under *Hernandez*. *See Moore*, 340 N.W.2d at 673 (*Hernandez* method may be used only when sentencing concurrently). The state basically concedes the trial court

should have used the statute in effect when the offenses were committed to calculate the presumptive sentences for Counts II and III. The length of the sentences on those counts is properly at issue even though execution was stayed. *State v. Fields*, 416 N.W.2d 734, 736 (Minn.1987).

■ We remand for resentencing on Counts II, III, VI and VII. On remand the trial court may depart from the presumptive sentence, on any of these counts, up to the sentence durations already imposed, if there are grounds for departure properly stated. *State v. Pieri*, 461 N.W.2d 398, 401 (Minn.App.1990). On Count V, the state points out that it was improper to execute part of the sentence and stay part of the sentence. *See State v. Stacey*, 359 N.W.2d 671, 673 (Minn.App.1984). This error can only be corrected by deleting the 8 months that were to be stayed. *Pieri*, 461 N.W.2d at 400–01. We remand to the trial court for this correction.

The state concedes the fines imposed by Medibus for Counts I and III exceed statutory limits. We agree with the state, however, that the fine for Count VII was not above the statutory limit. Minn.Stat. § 609.52, subd. 3(2) (1988) ($20,000 maximum fine). We remand for redetermination of the fines for Counts I and III.

■ Appellants' claim that the amount of restitution ordered is lacking in a factual basis is without merit. The claims forms themselves, with the amounts totaled in the state's summary of the claims, provide a factual basis, as does testimony of the state's investigators. Appellants also claim the orders are ambiguous as to whether their liability for restitution is joint or several. We remand this issue for clarification by the trial court.

### 6. Motion to strike reply brief

The state has moved to strike most of appellants' reply brief, arguing it is not limited to "new matter raised in the brief of the respondent," as required by Minn. R.Civ.App.P. 128.02, subd. 3. In the case cited by the state, this court struck a reply brief which raised "new issues" and which exceeded the 25–page limit under Minn.

R.Civ.App.P. 132.01, subd. 3. *Reserve Life Ins. Co. v. Commissioner of Commerce*, 402 N.W.2d 631, 634 (Minn.App.1987) *pet. for rev. denied* (Minn. May 20, 1987). Appellants' reply brief here does not exceed 25 pages, and, unlike the brief in *Reserve Life*, it does not raise "new issues." We deny the state's motion to strike portions of the reply brief.

### DECISION

There is sufficient evidence to support the convictions. Appellants adequately waived their right to separate counsel. They were not denied their rights to confrontation and to present a defense. The state's motion to strike and appellants' request for *in camera* review are denied. The sentences are reversed, in part, and remanded.

Affirmed in part, reversed in part, and remanded.

KLAPHAKE, Judge (concurring in part, dissenting in part).

While I join the majority with regard to Medibus, Olsen, and the evidentiary issues, I must respectfully dissent as to the validity of appellant Rivers' waiver of separate counsel. Because I believe Rivers was prejudiced by the trial court's failure to obtain an adequate waiver of Rivers' right to separate counsel, I would reverse his conviction and remand for a new trial.

The supreme court has long expressed "strong disapproval of dual representation." *State v. Wilson*, 294 Minn. 501, 502, 200 N.W.2d 185, 187 (1972). The court has noted the "severe" risk of a conflict of interest, enumerated many possible dangers and emphasized the court's own "disapproval" of joint representation. *State v. Olsen*, 258 N.W.2d 898, 904–05 (Minn.1977). It is against such strong language that we must judge the adequacy of an inquiry and waiver of the right to separate counsel.

The trial court's inquiry of Olsen and Rivers was not brief, and consisted of appropriate questions. When the nature of the two men's responses is considered,

however, I believe the inquiry was inadequate.

The trial court questioned both Olsen and Rivers as to the potential difficulties of joint representation. *See id.* at 905 (list of potential conflict areas). However, neither defendant's response indicated that these problem areas had been explored and resolved. In responding to the trial court, Olsen and Rivers emphasized their common business interests as partners in Medibus. This apparent approach to the issue as a business decision would naturally suppress any informed consideration of conflicting legal interests. Although Olsen and Rivers were tried together on charges stemming from their mutual business interests, the charges were brought against them as individuals. The record does not reflect that either Olsen or Rivers understood the distinctions between the cases against them or that they were aware of the other options available. Indeed, the court at one point expressed its concern "that I'm not getting some clear statements from you about how this thing was analyzed by you."

In addition, the state has failed to show there was no prejudice to Rivers. The supreme court in *Olsen* approved a standard of prejudice holding that

> only where " 'we can find no basis in the record for an informed speculation' that appellant's rights were prejudicially affected," can the conviction stand.

*Id.* at 907–08, n. 17 (citing *Lollar v. United States*, 376 F.2d 243, 247 (D.C.Cir.1967)). The state argues there was no prejudice because Olsen and Rivers had the same defense. However, this begs the essential question of whether they *should* have had the same defense. On this record it is apparent that only Olsen benefitted from a common defense.

The supreme court has noted the potential for conflict where defendants have "differences in degree of involvement in the crime." *Olsen*, 258 N.W.2d at 905. Unlike Olsen, Rivers had a potential defense other than the company's general defense that it had no fraudulent intent and simply relied on doctors' opinions. Defense counsel in closing argument, how-

ever, did not once argue Rivers' relatively minor role in the Medicare billing process. Counsel never mounted a sustained defense of Rivers individually as a person marginally involved in Medicare billing. This failure, which was in clear contrast to the performance of Sach's separate counsel, can only be explained by the conflict of interest under which counsel labored, given that such a defense of Rivers could only cast blame on Olsen. This conflict prejudiced Rivers. There is ample basis for an "informed speculation" that Rivers' rights were prejudicially affected, and I would reverse his conviction.