STATE of Minnesota, Respondent,

v.

Kevin Richard LITZAU, Petitioner, Appellant.

No. C3–00–2099.

Supreme Court of Minnesota.

Aug. 30, 2002.

178

John M. Stuart, State Public Defender, Steven P. Russett, Assistant State Public Defender, Minneapolis, for Appellant.

Mike Hatch, Minnesota Attorney General, John E. Galus, Assistant Atttorney General, Caia Johnson, Certified Student Attorney, St. Paul, Boyd Beccue Kandiyohi County Attorney, Wilmar, for Respondent.

OPINION

ANDERSON, Russell A., Justice.

Appellant Kevin Richard Litzau was convicted of controlled substance crime in the first degree for possessing methamphetamine with intent to sell in violation of Minn.Stat. § 152.021, subds. 1(1), 3(b) (2000), and sentenced to 134 months in prison. On appeal, the court of appeals affirmed the conviction by panel majority but remanded for resentencing. Concluding that the cumulative effect of evidentiary rulings deprived appellant of a fair trial, we reverse and remand for new trial.

Based on a tip from an informant, at approximately 1:30 p.m. on February 22, 2000, Atwater police placed appellant's 1984 Crown Victoria, which was parked at a specified residence, under surveillance.[1] At approximately 8:15 p.m., appellant arrived at the residence in a blue Buick Regal. Appellant got into the Crown Victoria, started the engine and then went into the residence. A few minutes later, appellant left the residence and drove away in the Crown Victoria.

The police followed appellant, stopped him, and obtained his permission to search anywhere in the vehicle. At about that time, the Atwater police chief arrived with his canine partner Max, a certified narcotics-detection canine. As the police chief began walking Max around the vehicle,

1. At around 1 p.m. on February 22, 2000, an informant told the Atwater police chief that about 30 minutes earlier the informant had personally observed methamphetamine in the air cleaner housing of appellant's Crown Victoria and that he thought appellant would be picking up the vehicle sometime that day. The informant had not seen appellant in possession of the controlled substance.

Max alerted to drugs under the vehicle's hood and then to drugs in the air cleaner housing when the hood was opened. Inside the air cleaner housing, police found a plastic bag with eight smaller bags inside. All of the bags contained a white substance that tested positive for methamphetamine.[2] Appellant was arrested and, following a *Miranda* warning, invoked his rights to silence and to counsel.

A vehicle registration check listed someone other than appellant as the registered owner of the Crown Victoria; but, a copy of the vehicle's title, found during an inventory search, indicated that appellant purchased the vehicle in December 1999. An oil change sticker indicated that the vehicle had been serviced recently, and further investigation revealed that the air filter was changed on January 6, 2000 and inspected on February 4, 2000. On neither occasion did the station manager who serviced the vehicle observe plastic bags in the air cleaner.

Appellant was charged by complaint with first-degree controlled substance crime for possession with intent to sell. The trial court denied appellant's pretrial request to compel disclosure of the informant's identity but granted appellant's motion to preclude testimony about the contents of the informant's tip, finding the risk that the jury would consider the contents as substantive evidence of appellant's guilt "too great."

On the morning of trial, the court revisited its earlier ruling pertaining to the contents of the informant's tip, indicating that the state would be allowed to elicit testimony "that a tip was received suggesting that [appellant] had possession of a controlled substance * * *." In opening statement, the prosecutor told the jury that on February 22, 2001, the Atwater police chief "received a tip. He received information suspecting [appellant] of possessing controlled substances and pursuant to that tip he commenced with [surveillance] * * *."

During direct examination of the trial's first witness, the Atwater police chief, the prosecutor elicited through leading questions testimony that the police chief had received a "tip indicating the suspicion that [appellant] possessed controlled substances." On cross-examination, defense counsel elicited that the informant had observed methamphetamine in the air cleaner about a half hour before reporting this to the police. On direct examination of the arresting officer, the prosecutor elicited that after stopping appellant and identifying him, the arresting officer "explained to [appellant] that we had a reliable source that has told us that he was carrying—transporting drugs in his car * * *." Both the police chief and the arresting officer made unsolicited references to appellant's exercise of his rights to silence and counsel. Other evidence for the state included testimony from a drug expert on the operation of drug dealers and testimony from the owner of the house where the police first observed the Crown Victoria. This witness testified that the vehicle had been in the driveway from 4:30 or 5 p.m. on February 21, 2000 until the next day when appellant picked up the vehicle, and that she did not see or hear anyone tamper with it while it was in the driveway. Appellant called two witnesses who testified that from about 8 a.m. on February 21, 2000 until about 5 p.m. on February 22, 2000, appellant was in Litchfield.

2. A forensic chemist later determined that the substance was a mixture containing methamphetamine weighing 86.5 grams, with the large bag containing 27.9 grams of substance and the eight individual bags weighing a total of 58.5 grams. While 27.9 and 58.5 add up to 86.4, the testimony at trial was that the total weight was 86.5 grams.

The trial court, without objection from appellant's counsel, gave a permissive-inference instruction to the jury. Following deliberations, the jury found appellant guilty of first-degree controlled substance crime. On appeal, the court of appeals affirmed the conviction by a 2–1 decision, rejecting appellant's claims that evidentiary rulings denied him a fair trial.

I.

Evidentiary rulings are committed to the trial court's discretion and will not be reversed absent a clear abuse of discretion. *State v. Bjork,* 610 N.W.2d 632, 636 (Minn.2000). "Evidentiary errors warrant reversal if 'there is any reasonable doubt the result would have been different had the evidence not been admitted.'" *State v. Grayson,* 546 N.W.2d 731, 736 (Minn.1996) (quoting *State v. Naylor,* 474 N.W.2d 314, 318 (Minn.1991)). As a general rule, where a defendant fails to object to a particular error at trial, the defendant is deemed to have forfeited his right to have the alleged error reviewed on appeal; however, a defendant may obtain appellate review and relief from plain errors affecting substantial rights if those errors had the effect of depriving the defendant of a fair trial. *State v. Williams,* 525 N.W.2d 538, 544 (Minn.1994).

Appellant initially contends that the admission of hearsay testimony relating the contents of the confidential informant's tip was reversible error where the state was allowed to elicit that the tip came from a "reliable source" who reported to police that appellant was transporting drugs in his car. The state argues that appellant is not entitled to any relief where the testimony was not offered for the truth of the matter asserted, appellant failed to ask for a limiting instruction, additional details concerning the tip were elicited by defense counsel, and error, if any, was not prejudicial.

In criminal cases, evidence that an arresting or investigating officer received a tip for purposes of explaining why the police conducted surveillance is not hearsay. Nevertheless, "[w]e have said a number of times that 'a police officer testifying in a criminal case may not, under the guise of explaining how [the] investigation focused on defendant, relate hearsay statements of others.'" *Williams,* 525 N.W.2d at 544 (quoting *State v. Cermak,* 365 N.W.2d 243, 247 (Minn.1985)); *see also State v. Hardy,* 354 N.W.2d 21, 24–25 (Minn.1984) ("[E]ven a limited elicitation, for nonhearsay purposes, of general testimony that a tip had been received that led to defendant's prints being compared with the latent print would have been unjustified in this case because the potential of the evidence being used for an improper purpose outweighed its very limited probative value."); 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 387, at 87 (2d ed.1994); 2 Charles T. McCormick, *McCormick on Evidence* § 249, at 104 (John W. Strong et al. eds., 4th ed.1992).[3]

"Hearsay is evidence of a declarant's out-of-court statement to prove the

3. Out-of-court statements may be admitted to show the probable state of mind and good faith subsequent conduct of the person who heard the statements. When the out-of-court statements have an impermissible hearsay aspect as well as a permissible nonhearsay aspect, the evidence has generally been admitted with a limiting instruction unless the need for the evidence is outweighed by the danger of misuse. 2 McCormick, *supra,* § 249, at 103–04.

However, one area of apparently widespread abuse should be noted. In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information re-

truth of what is asserted in the statement." *United States v. Reyes,* 18 F.3d 65, 69 (2d Cir.1994); *see also* Minn. R. Evid. 801(c). The "principal vice" of hearsay is that it deprives the opponent of the opportunity to cross-examine the declarant. *Reyes,* 18 F.3d at 69. In criminal cases, the denial of the defendant's right to challenge the declarant's statements in cross-examination implicates constitutional concerns. *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

We agree with appellant that testimony to the effect that the police had received a tip from a "reliable source" who said that appellant was suspected of possessing and "was carrying—transporting drugs" in his car was inadmissible hearsay. Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. There was no reason for the officers' testimony about the substance of the informant's conversation which pointed directly to appellant's guilt of the crime for which he was on trial. Context and background can be established, and are properly established, without the admission of the confidential informant's hearsay declaration.[4]

The state asserts that error in the admission of the substance of the tip, if any, was waived where appellant failed to object to the direct examination of the officers and elicited additional details about the tip on cross-examination. The trial court ruled on appellant's motion in limine to preclude the substance of the tip. Ordinarily, a party need not renew an objection to the admission of evidence to preserve a claim of error for appeal following a ruling on a motion in limine. Minn. R. Evid. 103(a) advisory committee's note (stating that a motion in limine to preclude evidence operates as a timely objection and obviates the requirement for further objection). If, however, excluded evidence is offered at trial because the court has changed its initial ruling, the objection should be renewed at trial. 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 103.11(2)(b)(ii), at 103–20.1–.3 (Joseph M. McLaughlin ed., 2d ed.2002). The record reflects some confusion as to the intent of the trial court's comments concerning the informant's tip at the beginning of trial; but if, as the state asserts, the trial court was merely explaining its earlier definitive ruling, appellant preserved the issue for appeal, although the better practice would have been to renew the objection at trial. It is true that hearsay evidence may be admitted to rebut "initiatives launched by the defendant," *Reyes,* 18 F.3d at 70, but here the substance of the confidential informant's tip preceded appellant's attempt to refute in a limited way the impression made by that information.

ceived," or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.

*Id.* § 249, at 104 (footnotes omitted), *quoted in State v. Hardy,* 354 N.W.2d at 25.

4. A police officer "may reconstruct the steps taken in a criminal investigation, may testify about his contact with an informant, and may describe the events leading up to a defendant's arrest, but the officer's testimony must be limited to the fact that he spoke to an informant without disclosing the substance of that conversation." *United States v. Williams,* 133 F.3d 1048, 1052 (7th Cir.1998) (citing *United States v. Lovelace,* 123 F.3d 650, 652 (7th Cir.1997)); *United States v. Reyes,* 18 F.3d at 70; *see, e.g., United States v. Walker,* 636 F.2d 194 (8th Cir.1980); *United States v. Campbell,* 466 F.2d 529 (9th Cir.1972).

The state claims that any evidentiary error was harmless. " 'If the verdict actually rendered was surely unattributable to the error, the error is harmless beyond a reasonable doubt.' " *State v. Juarez,* 572 N.W.2d 286, 292 (Minn.1997) (quoting *State v. Jones,* 556 N.W.2d 903, 910 (Minn.1996)). In this case, the substance of the informant's tip went to the critical issue at trial: whether appellant knowingly possessed the drugs found in his car. The state used the informant's tip to tie appellant to the crime, referring to the substance of the tip in opening remarks, eliciting the substance of the tip on examination of two officers, and ultimately arguing the credibility of the informant and the reliability of the information to the jury in closing argument. Where the evidence was aimed at having an impact on the verdict, we cannot say that the verdict was surely unattributable to the error.

The error in admitting the substance of the informant's tip was compounded by the denial of appellant's request for disclosure of the informant. The state has a legitimate interest in protecting the identity of persons who provide information to law enforcement. *Roviaro v. United States,* 353 U.S. 53, 59–60, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Where the disclosure of an informant's identity is relevant and helpful to the defense, or is essential to a fair determination of a cause, the state's privilege to withhold the informant's identity must give way. *Id.* at 60–61. In considering a request for disclosure of the identity of an informant, the trial court considers (1) whether the informant is a material witness; (2) whether the informant's testimony will be material to the issue of guilt; (3) whether the state's evidence is suspect; and (4) whether the informant's testimony might disclose entrapment. *State v. Ford,* 322 N.W.2d 611, 614 (Minn.1982).

When the informant is an eyewitness to the crime, an in camera hearing is appropriate to determine whether "there is a reasonable probability that the informer's testimony is necessary to a fair determination of guilt or innocence." 3 Weinstein & Berger, *supra,* § 510.07(5), at 510–17, *quoted in Syrovatka v. State,* 278 N.W.2d 558, 562 (Minn.1979). "All that is needed to justify an in camera inquiry is a minimal showing of a basis for inquiry but something more than mere speculation by the defendant that examination of the informant might be helpful." *State v. Moore,* 438 N.W.2d 101, 106 (Minn.1989). Where the informant is merely a transmitter of information rather than an active participant in or material witness to the crime, however, disclosure is generally not required, *State v. Houle,* 257 N.W.2d 320, 323 (Minn.1977), and mere speculation that the informant may have framed the defendant does not, by itself, warrant disclosure. *See Ford,* 322 N.W.2d at 614. In this case, in view of the prominent role the substance of the informant's tip took on at trial, the failure to afford at least an in camera inquiry exacerbated the error in admitting the substance of the tip in the first instance.[5]

## II.

Appellant also challenges the admission of expert testimony, references

5. The trial court denied appellant's motion for disclosure of the informant's identity on grounds that appellant had not made a sufficient showing that disclosure would lead to any testimony or other evidence material to the defense. In a memorandum of law submitted to the trial court in opposition to appellant's motion, the state represented to the court that the police chief had information that appellant planned to harm whoever "snitched" on him. This information was confirmed by neither live testimony nor affidavit, and the trial court did not rely on this information in denying appellant's motion.

to the exercise of his constitutional rights, and the permissive inference instruction. The admission of expert opinion testimony is within the broad discretion of the trial court. *State v. Ritt,* 599 N.W.2d 802, 810 (Minn.1999), *cert. denied,* 528 U.S. 1165, 120 S.Ct. 1184, 145 L.Ed.2d 1090 (2000); *Dunshee v. Douglas,* 255 N.W.2d 42, 47 (Minn.1977). "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Minn. R. Evid. 702.

Before trial, the court granted the state's motion to qualify an agent from the Kandiyohi County Sheriff's Department, a member of the CEE–VI Drug Task Force, as an expert witness, subject to the limitation that the expert's testimony be confined to information "within his personal knowledge" and that the expert would be "permitted to testify regarding the quantities of controlled substances and items commonly found in [a suspect's] possession which are indicative of the sale of drugs compared to personal use." At trial, however, the expert also testified that drug dealers often purchase vehicles without transferring title to their own names, sometimes use a second older vehicle to transport drugs to avoid forfeiture of a newer vehicle, and often hide drugs in obscure places such as in the air cleaner. The expert also suggested that it was not uncommon for drug dealers to consent to a search of their vehicles. The expert's testimony went well beyond that which was allowed by the trial court's ruling and was instead drug profile evidence, akin to character evidence, and "plainly inadmissible" under our decision in *Williams,* 525 N.W.2d at 548.

As for references to appellant's request for counsel and subsequent silence following a *Miranda* warning, it has long been recognized that a defendant's decision to exercise his constitutional rights to silence and to counsel may not be used against him at trial. *Juarez,* 572 N.W.2d at 290 (citing *Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *State v. Roberts,* 296 Minn. 347, 352, 208 N.W.2d 744, 747 (1973)). This is so because a jury would be "likely to infer from the testimony that [the] defendant was concealing his guilt * * *." *Roberts,* 296 Minn. at 353, 208 N.W.2d at 747. To avoid the problem occasioned by unsolicited references to a defendant's exercise of his constitutional rights, "the state has a duty to properly prepare its own witnesses prior to trial." *State v. Underwood,* 281 N.W.2d 337, 342 (Minn.1979).[6]

Finally, with regard to the permissive-inference instruction, as a general

6. The second reference to appellant's exercise of his constitutional rights occurred during cross-examination of the arresting officer when defense counsel asked the officer whether he recalled appellant asking him to dust for fingerprints. In response to counsel's third request, the officer volunteered that appellant had invoked his right to silence. Defense counsel "has a certain responsibility to limit the cross-examination so as to avoid areas which he knows may lead to objectionable testimony" and may not "bootstrap a reversal" through the elicitation of improper testimony on cross-examination, *Underwood,* 281 N.W.2d at 342, but there is no indication that any such attempt was made here. Nevertheless, "[a]n accused, whether guilty or innocent, is entitled to a fair trial, and it is the duty of the court, and of prosecuting counsel as well, to see that he gets one." *State v. Haney,* 222 Minn. 124, 125, 23 N.W.2d 369, 370 (1946). It seems to us that given the precarious path on which defense counsel was proceeding, either the prosecutor or the trial court in their respective roles as administrators of justice could have called for a

rule, jury instructions advising that a particular fact may be inferred from other particular facts, if proved, should be avoided. *State v. Olson,* 482 N.W.2d 212, 215 (Minn.1992). Such instructions " 'are undesirable in that they tend to inject argument into the judge's charge and lengthen it unnecessarily.' " *Id.* (quoting *Manual of Model Criminal Jury Instructions for the Ninth Circuit,* 48 (1989 ed.)).[7] Such instructions also improperly influence the jury not only by isolating particular facts but also by giving a particular step of logic "the official legal imprimatur of the state." Charles Collier, *The Improper Use of Presumptions in Recent Criminal Law Adjudication,* 38 Stan. L.Rev. 423, 456 (1986).

The permissive instruction given in this case allowed the jury to infer knowing possession of the controlled substance from two isolated facts: that the defendant was the driver and that methamphetamine was concealed in the body of the vehicle.[8] The instruction amounted to an intrusion on the jury's deliberative process because it effectively told the jury in this case that the judge thought there was sufficient evidence for a conviction. It was undisputed that appellant was the driver and that methamphetamine was concealed in the body of the vehicle. The only real issue was whether appellant knew that the vehicle contained methamphetamine. The instruction also focused the jury on some facts, rather than all the facts. "Permissive inferences * * * permit juries to avoid assessing the myriad facts which make specific cases unique." Charles R. Nesson, *Reasonable Doubt and Permis-*

bench conference to call this to counsel's attention, thereby obviating the risk of retrial.

7. Permissive-inference instructions are also unnecessary in that "[i]f the rational connection between facts presented and facts inferred is derived from common sense and experience, the matter can normally be left to the jury's judgment upon general instructions." *Olson,* 482 N.W.2d at 215 (quoting *Manual of Model Criminal Jury Instructions for the Ninth Circuit,* 48 (1989 ed.)). A permissive-inference instruction may also be improper if "it was not a balanced instruction on the various relevant factors bearing on the jury's determination of the disputed possession issue but rather was one which singled out and unfairly emphasized one factor, one piece of the circumstantial evidence, bearing on that determination, thereby suggesting to the jury that in the court's opinion that factor was of greater importance than other relevant factors." *Olson,* 482 N.W.2d at 216.

8. The trial court instructed the jury as follows:

   In determining whether or not it has been proven beyond a reasonable doubt that the defendant was in knowing possession of methamphetamine, you should consider all the evidence presented. The law allows, but does not require, you to find knowing possession from proof beyond a reasonable doubt that the defendant was the driver or in control of a passenger automobile and the methamphetamine was present in the automobile. If you so find beyond a reasonable doubt, you may, but are not required to, find that the defendant knowingly possessed methamphetamine.

   This instruction was patterned after 10A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 20.56 (4th ed.1999) which, in turn, was based on Minn.Stat. § 152.028 (2000). This provision was aimed at alleviating the prosecution's burden of proof in constructive possession situations involving several occupants of a residence or passenger automobile in which controlled substances are found. Philip Leavenworth, *Illegal Drugs, New Laws, and Justice: An Examination of Five Recently Enacted Minnesota Statutes,* 16 Wm. Mitchell L.Rev. 499, 502 (1990). Nevertheless, as we have said in a number of cases, we have " 'primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters and matters of trial and appellate procedure.' " *State v. Lindsey,* 632 N.W.2d 652, 658 (Minn.2001) (*quoting Olson,* 482 N.W.2d at 215). "Moreover, one of the primary or core functions of this court is to ensure that each criminal defendant receives a fair trial." *Olson,* 482 N.W.2d at 215.

*sive Inferences: The Value of Complexity,* 92 Harv. L.Rev. 1187, 1192 (1979). Because the instruction focused the jury on two isolated facts, the instruction suggested that the jury could convict without consideration of all of the evidence; and under these circumstances, submission of the instruction was plain error. *See Williams,* 525 N.W.2d at 544; *State v. Malaski,* 330 N.W.2d 447, 451–53 (Minn.1983).

In summary, our examination of the record convinces us that the cumulative effect of the admission of hearsay testimony relating to the substance of the confidential informant's tip, drug dealer profile evidence, unsolicited references to appellant's invocation of his rights to silence and counsel, and submission of a permissive inference instruction deprived appellant of a fair trial.

Reversed and remanded for a new trial.

MEYER, J., not having been a member of this court at the time of argument and submission, took no part in the consideration or decision of this case.

GILBERT, Justice (concurring in part and dissenting in part).

I concur that it was error to admit the expert testimony cited by the majority as well as Chief Schmidt's testimony about appellant's request for an attorney, but would hold that these errors were harmless. As to the alleged remaining errors, either they were not errors at all, were brought on by defense counsel, or were waived and forfeited at trial or on appeal. Therefore, I respectfully dissent to the balance of the opinion.

The majority sets the stage in support of its holding by reversing the natural order of things that actually occurred at trial. First of all, it overemphasizes the "prominent role the substance of the informant's tip took on at trial." The majority next discounts and then disregards the threats of harm that the appellant allegedly made about the confidential informant. Rather than address that issue, or set appropriate standards for addressing that issue, the majority then inexplicitly states that the trial court's error "was compounded by the denial of appellant's request for disclosure of the informant." This rationale rewards appellant for the alleged threat.

The trial court was confronted with the serious dilemma of what to do about appellant's request for the disclosure of the confidential reliable informant when appellant allegedly threatened to physically harm whoever "snitched" on him. The court was informed that the informant was afraid for his/her safety and the safety of his/her family. There is nothing in the record to rebut this allegation. Although there was no trial court finding relative to the informant's safety, I would affirm the court of appeals' holding that the trial court was "legitimately concerned about the informant's safety." The threat to the informant's safety was a factor that overshadowed the trial court's decision and not a factor that this court should simply ignore, especially in light of appellant's extensive past criminal record.[1]

The majority acknowledges that the trial court correctly considered the four factors outlined in *Ford* in determining whether disclosure was necessary. However, the majority then glosses over significant facts relating to materiality of the informant's information. While the informant may have been a material witness to the fact that there was methamphetamine in the

1. The trial court was also aware of appellant's two prior controlled substance convictions and burglary conviction.

air cleaner of appellant's vehicle, the informant's testimony was immaterial to the ultimate issue of guilt. The informant's statement was used solely to explain the surveillance and stop—issues appellant never appealed. The informant's identity was immaterial since appellant voluntarily consented to the search that enabled the state to gather the evidence to prove its case without the informant's testimony. It was only after appellant's voluntary consent that the police officers, with the help of a trained dog, discovered a plastic bag with several smaller bags inside of it, containing a total of 86.5 grams of methamphetamine worth approximately $9,000, hidden inside the air cleaner of appellant's vehicle. None of this evidence is disputed. After the discovery of the methamphetamine, the only issue remaining in the case became whether appellant knowingly possessed methamphetamine. As to this issue, the informant adds nothing because the vehicle, at the designated address, had drugs in it and was being used for trafficking in these drugs. At the omnibus hearing, Chief Schmidt testified the informant had not seen appellant in possession of the drugs. Contrary to the "prominent role" the majority assumes that this testimony played, the informant's tip added nothing about whether appellant knowingly possessed the drugs found in his car. The trial court reasonably concluded any further testimony would not be of any probative value.

The informant was a mere transmitter of information, rather than an active participant and/or material witness to the crime. Accordingly, the informant's name did not have to be disclosed. *State v. Houle,* 257 N.W.2d 320, 323 (Minn.1977). There was at best mere speculation that the informant may have framed the appellant, but there was no testimony by appellant or any other evidence to support this speculation, meaning disclosure was not required. *State v. Ford,* 322 N.W.2d 611, 614 (Minn.1982). Appellant simply argues on appeal that he was denied a fair trial because his defense hinged on his ability to provide some plausible explanation for the presence of the methamphetamine in his vehicle. The only "evidence" in the record to support this explanation was appellant's assertion that he was somehow framed, but this was not evidence at all; it was mere speculation.

The informant merely told the police what the informant observed about the car and drugs. He/she did not participate in the crime nor offer any evidence about what knowledge the appellant had or role he played, if any, in placing the drugs in the air cleaner. The facts of this case are similar to the facts in *Ford,* where the informant supplied conclusory information to the police leading to surveillance and ultimately to the gathering of evidence independent from the informant's tip used to convict the defendant of the charged offense. *See Ford,* 322 N.W.2d at 613–14. While it is true that the informant did witness the methamphetamine in appellant's car on the date appellant was arrested, the state did not rely on the informant's testimony in establishing appellant's guilt, as in *Ford.* 322 N.W.2d at 614.

Although appellant in this case asserted that someone else must have placed the methamphetamine in his vehicle, no offer of proof was made indicating that anybody else had access to appellant's vehicle during the time in question. There was nothing in the record to indicate that the state's evidence was suspect in any manner or that any of the *Ford* factors were implicated. On these facts, the trial court did not abuse its discretion by failing either to require disclosure of the informant's identity or to hold an in camera hearing.

With regard to the admittedly hearsay testimony of the contents of the informant's tip, the appellant failed to object to this particular error at trial. A defendant who does not object to the admission of evidence waives the right to appeal such admission, even if the evidence should not have been admitted. *State v. Moorman,* 505 N.W.2d 593, 602 (Minn.1993). The trial court's final ruling on this issue did not allow the state to introduce the details of the informant's tip. The majority focuses on the trial court's initial ruling that testimony concerning the informant would be limited to the fact that a tip was received and that "the record reflects some confusion as to the intent of the trial court's comments concerning the informant's tip at the beginning of trial * * *."

Appellant's attorney did not object to the trial court's ruling the morning of trial, did not object to the state's opening statement, and did not object to Chief Schmidt's testimony about what the informant said. Instead, appellant's counsel proceeded to cross-examine Chief Schmidt as to the *exact nature* of the informant's tip over the hearsay objection of the state rather than pursue "the better practice * * * to renew the objection at trial," as the majority recommends. Appellant's counsel embarked upon a detailed cross-examination of the disputed statement to make it perfectly clear what the exact nature of the informant's tip was by not only repeating this information but going into more detail about the tip. Therefore, the jury was left with a full understanding of exactly what the informant said.

It is true that some of Chief Schmidt's testimony may have been hearsay; however, appellant's counsel knowingly and intentionally cross-examined a witness to insert this information in the record and it is this same testimony that appellant now argues was admitted in error. Appellant cannot now argue that allowing the content of the tip was prejudicial. This argument is not based on any precedent, does not articulate any workable rule of law under these facts, and negates the better practice recommendation of making an objection to help remind the judge of either an objection or of its prior ruling. Many of these issues relate to the quality of legal representation that the appellant received from his counsel. While an ineffective assistance of counsel claim may have merit, that claim is not before us.

The majority then ventures to establish new law as to when an in camera inquiry would be held. This is done without any cite to authority and supported by the mere conclusion that "it seems to us that the failure to afford at least an in camera inquiry exacerbated the error in admitting the substance of the tip in the first instance." The majority gives no explanation as to how this may have exacerbated the error or what standard should be used by the trial court in deciding when to use an in camera hearing when the request is based on mere speculation. If there was any exacerbation of an error, that occurred because of appellant's alleged threats, with which the appellant is now rewarded.

The majority should not simply dismiss the alleged threat because it "was confirmed by neither live testimony nor affidavit." This offer by the state was done in compliance with the offer of proof analysis we recently reiterated in *Santiago v. State,* 644 N.W.2d 425, 441–43 (Minn.2002). Appellant did not even put into contention the legitimacy of the alleged threat. Contrary to what the majority asserts, we have never held that an offer of proof would require "live testimony" or an "affidavit" in this context and any suggestion to that effect is contrary to our precedent. *See id.* at 442–43.

Finally, the majority incorrectly concludes that it was plain error for the trial court to give the permissive inference of possession instruction. This instruction was based on a statute. Appellant failed to object to this jury instruction, thereby requiring him to show that giving this instruction was plain error. While we discussed concerns about this sort of permissive inference instruction in *State v. Olson,* 482 N.W.2d 212, 215–16 (Minn.1992), we reversed and remanded for a new trial in that case because the instruction was not a balanced one and failed to inform the jury that it was not required to infer that the defendant knowingly possessed the drugs. *Id.* at 216. Here, the trial court's instruction was balanced, explicitly telling the jury that "[t]he law allows, *but does not require,* you to find knowing possession * * *" and that the jury "may, *but [is] not required to,* find that the defendant knowingly possessed methamphetamine." (Emphasis added). Under these facts, the instruction was neither erroneous nor did it affect appellant's substantial rights.

For the foregoing reasons, I would affirm appellant's conviction.