*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0023**

State of Minnesota,
Respondent,

vs.

Duane Thomas Mizner,
Appellant.

**Filed October 19, 2015
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Aitkin County District Court
File No. 01-CR-13-207

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Jim Ratz, Aitkin County Attorney, Aitkin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of fourth-degree criminal sexual conduct, arguing that (1) the prosecutor plainly erred by eliciting testimony that appellant wanted an attorney when asked by police to give a statement, (2) the district court plainly erred by failing to instruct the jury on the intent element, and (3) the district court erred and inadvertently departed by imposing a consecutive sentence. Because the prosecutor did not err by eliciting the contested testimony and the district court's erroneous jury instruction did not affect appellant's substantial rights, we affirm in part. But because the district court erred by imposing a consecutive sentence, we reverse in part and remand for imposition of a concurrent sentence.

## FACTS

The Aitkin Police Department received a report that appellant Duane Thomas Mizner, a massage therapist at a spa and wellness center in Aitkin, touched D.S.'s vaginal area during a massage. D.S. told the police that Mizner touched "way too far up her thigh," rubbed her groin area and underwear, and put his fingers inside her vagina. Aitkin Police Chief Timothy Catlin went to the spa and wellness center to interview Mizner. Mizner admitted that he had given D.S. a massage earlier that day, but denied that anything inappropriate happened during the massage. A few days later, Chief Catlin again contacted Mizner to take a second statement. Mizner declined to speak to him and stated that he wanted to talk to an attorney. Respondent State of Minnesota charged

Mizner with third- and fourth-degree criminal sexual conduct. The case was tried to a jury.

At trial, Mizner testified that, during the massage, his hands never touched D.S.'s crotch or vagina. Mizner's attorney argued to the jury that D.S.'s statements regarding the incident were inconsistent. The attorney contrasted D.S.'s inconsistent statements with Mizner's consistent denials and openness with Chief Catlin.

During his opening statement, Mizner's attorney pointed out that Mizner "sat down with Chief Catlin, [and] gave a full and frank interview. He didn't call an attorney. He didn't flee." During Mizner's cross-examination of Chief Catlin, the following exchange occurred:

> Q: . . . You told [Mizner] that there could be potential criminal charges against him, correct?
> A: Correct.
> Q: Okay. Mr. Mizner agreed to talk to you, correct?
> A: Correct.
> Q: Okay. You informed Mr. Mizner that he had the right to remain silent?
> A: Yes.
> Q: He could consult with an attorney.
> A: Yes.
> Q: Mr. Mizner agreed to talk to you, didn't he?
> A: Yes, he did.
> Q: He answered all your questions.
> A: Yes, he did.
> Q: He didn't contact an attorney, did he?
> A: No, he did not.

On redirect, the prosecutor asked Chief Catlin if he contacted Mizner again a few days later for a follow-up interview. Chief Catlin stated "yes" and testified that "[a]t that time [Mizner] wanted to talk to an attorney." Mizner did not object.

Mizner testified on direct examination that Chief Catlin came to the spa and wellness center, asked for a statement, and read him his *Miranda* rights. Mizner testified that he provided a statement and did not call an attorney. On cross-examination, the following exchange occurred between the prosecutor and Mizner:

> Q: But [Chief Catlin] attempted to talk to you a few days later and you refused.
> A: That—well, I didn't refuse, I told him—
> Q: Wait, yes or no?
> A: —that my lawyer—
> Q: You refused to give the statement at that time.
> A: No.
> Q: You did not refuse.
> A: I did not.
> Q: So you gave, you'd never gave a second statement.
> A: That's correct.

Mizner did not object to the prosecutor's questions.

D.S. testified that during the massage, Mizner skimmed her underwear, slipped his hand underneath her underwear, and "started to" put one finger inside her vagina, at which point she pushed his hand away and said "no, thank you." D.S. testified that Mizner left the room, and she put on her clothes and left. The owner of the spa and wellness center testified that D.S. was angry and slammed the door as she left the building. D.S.'s fiancée testified that D.S. was "hysterically crying" when she returned to their cabin after the massage.

The jury found Mizner not guilty of third-degree criminal sexual conduct but guilty of fourth-degree criminal sexual conduct. The district court imposed a 24-month stayed prison sentence, which was to run consecutively to Mizner's previously imposed prison term for a second-degree-assault conviction. This appeal follows.

4

# DECISION

## I.

Mizner argues that "the prosecutor committed reversible plain error by eliciting testimony that [he] wanted to talk to an attorney when asked by police to give a second statement." "Prosecutors have an affirmative obligation to ensure that a defendant receives a fair trial, no matter how strong the evidence of guilt." *State v. Ramey*, 721 N.W.2d 294, 300 (Minn. 2006). And it is improper for prosecutors to elicit inadmissible evidence. *Id.* "[I]t has long been recognized that a defendant's decision to exercise his constitutional rights to silence and to counsel may not be used against him at trial." *State v. Litzau*, 650 N.W.2d 177, 185 (Minn. 2002). "This is so because a jury would be likely to infer from the testimony that the defendant was concealing his guilt." *Id.* (quotation omitted).

A defendant who fails to object to alleged prosecutorial misconduct ordinarily forfeits the right to appellate review of the purported misconduct. *State v. Ture*, 353 N.W.2d 502, 516 (Minn. 1984). This court has discretion to review unobjected-to prosecutorial misconduct if plain error is shown. Minn. R. Crim. P. 31.02; *Ramey*, 721 N.W.2d at 297-99. A plain-error claim based on prosecutorial misconduct has three requirements: the prosecutor's unobjected-to act must constitute error, the error must be plain, and the error must affect the defendant's substantial rights. *Ramey*, 721 N.W.2d at 302. The burden rests with the defendant to demonstrate error that is plain. *Id.* "An error is plain if it was clear or obvious," which is usually shown "if the error contravenes case law, a rule, or a standard of conduct." *Id.* (quotation omitted). If the defendant

5

satisfies his burden, the burden shifts to the state to demonstrate that the error did not affect the defendant's substantial rights. *Id*. "The third prong, requiring that the error affect substantial rights, is satisfied if the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). "If these three prongs are satisfied, [this] court then assesses whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Ramey*, 721 N.W.2d at 302.

In this case, the prosecutor elicited testimony from Chief Catlin that Mizner declined a second interview and stated that he wanted to contact an attorney. The prosecutor also asked Mizner if he refused to talk to Chief Catlin and elicited testimony from Mizner that the second interview never happened. The state argues that Mizner opened the door to evidence regarding Mizner's decision to exercise his constitutional rights to silence and to counsel. We agree.

> Opening the door occurs when one party by introducing certain material creates in the opponent a right to respond with material that would otherwise have been inadmissible. The doctrine is essentially one of fairness and common sense, based on the proposition that one party should not have an unfair advantage and that the factfinder should not be presented with a misleading or distorted representation of reality.

*State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007) (citations and quotations omitted).

Here, the prosecutor elicited evidence that Mizner declined a second interview and wanted to speak to an attorney after (1) Mizner's attorney stated in his opening remarks that Mizner participated in a full and frank interview with Chief Catlin and did not ask for an attorney, (2) Mizner's attorney elicited testimony from Chief Catlin on cross-

6

examination that Mizner answered all of Chief Catlin's questions and did not ask for an attorney, and (3) Mizner testified that he provided a statement to Chief Catlin and did not ask for an attorney. Mizner's approach created a misleading representation that he fully cooperated with the police and never exercised his right to remain silent or his right to an attorney. Under the circumstances, the state had a right to respond with evidence that otherwise would have been inadmissible. *See State v. McCullum*, 289 N.W.2d 89, 92-93 (Minn. 1979) (stating that the defendant opened the door to testimony "that defendant refused to give a written statement until he had talked to an attorney" because defense counsel "had elicited from other police officers that defendant had been courteous and cooperative with the police" and "[s]imilar testimony was also elicited from another witness"). Had the state not done so, Mizner's misleading representation would have given him an unfair advantage at trial. In sum, Mizner opened the door to the evidence, and the prosecutor did not err by presenting it.

**II.**

Mizner argues that the district court "committed prejudicial plain error by failing to instruct the jury [that] the state had to prove [he] intentionally touched the complainant's intimate parts 'with sexual or aggressive intent.'" Mizner did not object to the contested jury instruction.

An unobjected-to, erroneous jury instruction is subject to plain-error analysis. *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). To obtain relief, Mizner must establish (1) an error, (2) that is plain, and (3) that affects his substantial rights. *Griller*,

7

583 N.W.2d at 740. An error is plain if it "contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302.

Mizner was charged with fourth-degree criminal sexual conduct under Minn. Stat. § 609.345, subd. 1(o) (2012), which provides:

> A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the fourth degree if . . . the actor performs massage or other bodywork for hire, the complainant was a user of one of those services, and nonconsensual sexual contact occurred during or immediately before or after the actor performed or was hired to perform one of those services for the complainant.

"Sexual contact" for the purposes of section 609.345, subdivision 1(o),

> includes any of the following acts committed without the complainant's consent, except in those cases where consent is not a defense, and *committed with sexual or aggressive intent*: (i) the intentional touching by the actor of the complainant's intimate parts, or . . . (iv) in any of the cases above, the touching of the clothing covering the immediate area of the intimate parts . . . .

Minn. Stat. § 609.341, subd. 11 (i), (iv) (2012) (emphasis added).

The district court instructed the jury consistent with 10 *Minnesota Practice*, CRIMJIG 12.123 (2012), which fails to explain that the actor's touching must be committed with sexual or aggressive intent. The "CRIMJIGs are not precedential or binding" and "[w]hen the plain language of the statute conflicts with the CRIMJIG, the district court is expected to depart from the CRIMJIG and properly instruct the jury regarding the elements of the crime." *State v. Gunderson*, 812 N.W.2d 156, 162 (Minn. App. 2012) (quotation omitted). Here, the parties agree, and we hold, that the jury instruction was plainly erroneous.

8

But Mizner has not demonstrated that the error affects his substantial rights. "An error affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case. An error in instructing the jury is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury's verdict." *State v. Watkins*, 840 N.W.2d 21, 28 (Minn. 2013) (citation and quotation omitted).

> [T]he omission of an element of a crime in a jury instruction does not automatically require a new trial. Instead, the reviewing court must conduct a thorough examination of the record to determine whether the omission of an element of a charged offense from the jury instruction was sufficiently prejudicial in light of the standard of review. The reviewing court may consider, among other factors, whether: (1) the defendant contested the omitted element and submitted evidence to support a contrary finding, (2) the State submitted overwhelming evidence to prove that element, and (3) the jury's verdict nonetheless encompassed a finding on that element.

*Id.* at 28-29.

Mizner did not testify or argue that he massaged D.S.'s vagina or touched her underwear without sexual or aggressive intent.[1] Instead, he testified and argued that he did not touch D.S.'s vagina or crotch. Moreover, D.S.'s testimony that Mizner touched her vagina and her underwear over her vagina was strong evidence of sexual intent. *See State v. Ness*, 707 N.W.2d 676, 687 (Minn. 2006) (stating that "sexual or aggressive intent can readily be inferred from the contacts themselves"). There could be no other reason for Mizner to touch D.S.'s vagina. Mizner himself testified that there is a "rule"

---

[1] Mizner at one point testified that he did not touch D.S. in "any sexual manner." An objection to that testimony was sustained.

to stay "four inches . . . away from the groin area" when performing a massage. *See id.* (noting that "there could be no other reason for [the defendant] to touch [the victim's] intimate parts"). On this record, Mizner has not demonstrated that there is a reasonable likelihood that failing to give the sexual-intent instruction had a significant effect on the jury's verdict.

## III.

Mizner argues that the district court erred and inadvertently departed by imposing a consecutive sentence. "[W]hether . . . consecutive sentences imposed were permissive under the sentencing guidelines or whether they constitute an upward departure . . . is a question of law subject to de novo review." *State v. Rannow*, 703 N.W.2d 575, 577 (Minn. App. 2005).

The parties agree, as do we, that consecutive sentencing was not permissive because the presumptive disposition for Mizner's fourth-degree criminal-sexual-conduct conviction is a stayed prison term. *See* Minn. Sent. Guidelines 2.F.2.a.(1) (2012) (stating that "[c]onsecutive sentences are permissive if the presumptive disposition for the current offense(s) is commitment"). The parties also agree, and we conclude, that because the district court did not state grounds for a sentencing departure, Mizner's fourth-degree criminal-sexual-conduct sentence should have been concurrent to his previously imposed second-degree-assault sentence. *See State v. Geller*, 665 N.W.2d 514, 516 (Minn. 2003) ("If no reasons for departure are stated on the record at the time of sentencing, no

departure will be allowed.") (emphasis omitted).  We therefore reverse Mizner's sentence and remand for imposition of the presumptive concurrent sentence.

**Affirmed in part, reversed in part, and remanded.**