*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1504**

State of Minnesota,
Respondent,

vs.

Shawnti Tramayne Fleming,
Appellant.

**Filed September 19, 2016
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-12-32133

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Kelly O. Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

A jury convicted Shawnti Fleming of second-degree drug possession and child endangerment after police found 14 grams of crack cocaine in the Chevy Blazer he was driving with his three-year-old daughter as a passenger. Fleming appeals from his convictions, arguing that the district court abused its discretion by allowing hearsay in violation of his right to confront adverse witnesses and by admitting prior-conviction evidence without a limiting instruction, that the prosecutor committed misconduct by asking a defense witness how much he was paid to testify, and that his defense counsel provided constitutionally deficient representation. We affirm because the supposed hearsay caused no prejudice, the district court acted within its discretion and did not plainly err in admitting the conviction evidence without giving a limiting instruction, the prosecutor was permitted to explore witness bias, and trial counsel represented Fleming reasonably.

**FACTS**

An informant told Minneapolis police that a tan or gold Chevy Blazer carrying crack cocaine would arrive at a particular intersection on September 25, 2012, and officers waited there for it at 5:30 p.m. The Blazer arrived and officers converged on it at gunpoint, finding three men and a young girl inside. The driver was Shawnti Fleming and the girl was his three-year-old daughter. Police searched the jacket that Fleming had been holding in his lap and found two bundles of cash totaling $4,725 and two baggies containing 14 grams of crack cocaine.

2

The state charged Fleming with first-degree controlled substance crime (sale) under Minnesota Statutes section 152.021, subdivision 1(1) (2012), and gross-misdemeanor endangerment of a child under section 609.378, subdivision 1(b)(2) (2012). Fleming moved to suppress the drug evidence. The district court held an evidentiary hearing to determine if the informant's tip gave police probable cause to arrest Fleming. The district court suppressed the evidence, holding that the informant's tip did not give police probable cause to arrest. On the state's appeal, this court reversed and remanded for trial. *See State v. Fleming*, No. A14-0426 (Minn. App. Sept. 15, 2014).

Responding to pretrial motions, the district court limited what the arresting officer could say about the reason for Fleming's arrest. The district court ruled that the officer could testify that he had information that there were drugs in the Blazer, but the officer could not testify about the informant's statements or how police got the information.

Officer Jeffrey Werner testified that he was working on a narcotics case. When asked about a tan or gold Blazer, consistent with the district court's pretrial ruling, Officer Werner said, "I had information that that vehicle was going to be arriving in a certain area with crack cocaine in it." He told the jury that officers approached with guns drawn. The officer said he saw a jacket in Fleming's lap, which fell to the floor when he pulled Fleming out. Once he handcuffed Fleming, the officer searched the jacket and found $4,725 in cash and two baggies with 14 grams of crack cocaine.

Fleming called the two other men from the Blazer to testify. The first man testified that he did not see Fleming with a jacket, and the second testified that S.R.A., supposedly another recent passenger, had forgotten his jacket in the backseat when they dropped him

3

off shortly before police stopped the Blazer. Fleming called S.R.A., who testified that he had forgotten his jacket, which he said had his crack cocaine in its pockets, when he had been dropped off. The jacket had no personally identifying markings or identifying items. (S.R.A. claimed that his father's identification was also in the jacket, but the officer testified that he found no one's identification.)

The prosecutor ended S.R.A.'s cross-examination this way:

> Q: Okay. So how much did you get paid to do this here today?
> A: What are you talking about? Is that an appropriate question?
> THE COURT: Just answer the question
> THE WITNESS: I didn't get paid nothing.

Fleming's attorney did not object to any of this exchange.

Fleming testified in his own defense. The state had informed him before trial that, if he testified, it would seek to introduce five prior felony convictions to impeach him. The district court allowed only the two most recent convictions for impeachment purposes: a 2003 fifth-degree drug possession conviction and a 2006 second-degree drug possession conviction, with the 2006 conviction only named as an unspecified felony. Fleming testified that he had dropped S.R.A. off a few minutes before being arrested and that the jacket was never in his lap. He also testified that the money was not in the jacket but was taken from his pants pocket, and he said he was carrying such a large amount of cash so he could buy a car. Fleming did not at any point request, and the district court did not give, a limiting instruction restricting the jury's consideration of the impeachment evidence.

4

The jury acquitted Fleming of the first-degree sale charge but found him guilty of the lesser included offense of second-degree possession and of child endangerment. The district court sentenced Fleming to 98 months in prison. Fleming appeals.

## DECISION

Fleming raises several arguments challenging his convictions. First, he argues that the arresting officer's testimony was inadmissible hearsay that violated his confrontation right. Second, he maintains that the district court abused its discretion by allowing the state to impeach him with two prior convictions and then plainly erred by not giving the jury a limiting instruction on how it may consider the convictions. Third, he argues that the prosecutor committed misconduct by asking S.R.A. whether he was paid for his testimony. Fourth, he asserts that his trial counsel provided him constitutionally deficient representation. He raises several additional arguments in a pro se supplemental brief.

## I

Fleming argues that Officer Werner's testimony about his knowledge of the Blazer containing drugs constituted inadmissible hearsay under *State v. Litzau*, 650 N.W.2d 177, 182 (Minn. 2002). *Litzau* does not carry Fleming's argument. It reminds us that we review evidentiary rulings for an abuse of discretion. *Id.* The *Litzau* court explained that, when the purpose is to explain police action, testimony that police received a tip is not inadmissible hearsay. *Id.* The opinion includes a limit, however, so that an officer may not relate hearsay statements of others to explain how the investigation focused on the defendant. *Id.*

The rule presented and applied in *Litzau* asks two parallel questions: whether the officer's testimony contains inadmissible hearsay and whether its probative value is

5

substantially outweighed by the danger of unfair prejudice. *Litzau*, 650 N.W.2d at 182–83; *see generally State v. Hardy*, 354 N.W.2d 21, 24–25 (Minn. 1984) (noting that the prosecutor tried to use the contents of a tip for a hearsay purpose, but that even a limited elicitation for a nonhearsay purpose would have been unjustifiably prejudicial). Comparing this case to *Litzau* is instructive. In *Litzau*, the arresting officer testified, "I explained to [appellant] that we had a reliable source that has told us that he was carrying—transporting drugs in his car." *Id.* at 181. And the police chief testified that he had received a "tip indicating the suspicion that [appellant] possessed controlled substances." *Id.* The supreme court held that these statements constituted inadmissible hearsay, and it implied that they were unfairly prejudicial under rule 403 given that "[t]here was no reason for the officers' testimony about the substance of the informant's conversation which pointed directly to appellant's guilt of the crime for which he was on trial." *Id.* at 183.

When it determined that the testimony contained inadmissible hearsay, the *Litzau* court noted *United States v. Williams*, 133 F.3d 1048, 1052 (7th Cir. 1998), for the proposition that an "officer's testimony must be limited to the fact that he spoke to an informant without disclosing the substance of that conversation." *Litzau*, 650 N.W.2d at 183 n.4. The *Williams* court stated that "[t]estimony recounting the conversation between a government agent and an anonymous informant *where the informant identifies the defendant* and the substance of the conversation is offered into evidence constitutes inadmissible hearsay." 133 F.3d at 1052 (emphasis added). *Williams*, like *Litzau* and *Hardy*, involved statements that directly identified and implicated the defendants. These cases highlight a key aspect of the limit on officer testimony concerning tips: that the

officer "may not, under the *guise* of explaining how [the] investigation *focused on defendant*, relate hearsay statements of others." *Litzau*, 650 N.W.2d at 182 (emphasis added). The use of the word "guise" implies that the true purpose of the statement would not be to explain police conduct, but rather to implicate the defendant directly.

In contrast with *Litzau*, Officer Werner testified that he had "information that that vehicle was going to be arriving in a certain area with crack cocaine in it." Unlike the statement in *Litzau*, this statement did not implicate the defendant, but only the "vehicle" without reference to anyone in particular. The statement is consistent with Fleming's defense, which was that the drugs belonged to someone who had allegedly been in the Blazer (S.R.A.), not that there were no drugs in the Blazer. That the statement did not point to Fleming renders it nonprejudicial and admissible under *Litzau*, and the fact that the statement dovetails with Fleming's argument reinforces this conclusion. And the statement that the Blazer "was going to be arriving in a certain area with crack cocaine in it" was offered to explain police action rather than to prove that the vehicle was in the area and contained crack cocaine. The substance of Officer Werner's testimony here was not offered to prove the truth of the matter asserted.

Fleming also argues that Officer Werner's testimony violates the Confrontation Clause because he was unable to cross-examine the declarant. But even if the statement contained testimonial hearsay that violated Fleming's right to confrontation, its admission does not require reversal. We review violations of the Confrontation Clause for harmless error, asking whether a violation was harmless beyond a reasonable doubt. *State v. Courtney*, 696 N.W.2d 73, 79 (Minn. 2005). We consider the manner in which the evidence

7

was presented, whether it was highly persuasive, whether it was used in a closing argument, whether it was effectively countered, and the strength of the evidence. *Id.* at 80.

Officer Werner's testimony about the substance of the tip was brief and not apparently "aimed at having an impact on the verdict." *Litzau*, 650 N.W.2d at 184. Nor was it very persuasive concerning Fleming's guilt. The trial did not address the issue of whether the Blazer contained crack cocaine (the substance of the supposed hearsay declaration). Fleming's defense was that the drugs belonged to another, not that there were no drugs in the Blazer, and this defense mitigated any potential harm from the testimony. The testimony *was* referenced in closing, but the references mainly explained police conduct. And the state presented consistent evidence showing the location of the jacket in Fleming's lap at the time of the stop and proving that the jacket contained crack cocaine. Fleming's defense witnesses presented numerous inconsistencies. We conclude that any potential violation of Fleming's right to confrontation was harmless beyond a reasonable doubt.

## II

Fleming challenges the district court's decision allowing him to be impeached with two prior convictions. A witness's prior felony convictions are admissible to impeach credibility if the district court determines that the conviction's probative value outweighs its prejudicial effect. Minn. R. Evid. 609(a)(1). To evaluate whether prior convictions may be used to impeach the defendant, the district court considers five factors: (1) the prior conviction's impeachment value, (2) the conviction's date and the defendant's subsequent criminal history, (3) the similarity of the past crime and the charged crime (with greater

similarity weighing against admission), (4) the importance of the defendant's testimony, and (5) the centrality of credibility in the case. *State v. Jones*, 271 N.W.2d 534, 537–38 (Minn. 1978). We review the district court's decision to admit prior convictions for a clear abuse of discretion. *State v. Swanson*, 707 N.W.2d 645, 654 (Minn. 2006).

The district court allowed the state to impeach Fleming with a 2003 fifth-degree possession conviction and a 2006 second-degree possession conviction, but it restricted the 2006 conviction to being referred to as only a felony conviction without specifics. Minnesota Rule of Evidence 609(a) allows a party to impeach a witness with unspecified felony convictions. *State v. Hill*, 801 N.W.2d 646, 652 (Minn. 2011). Whether to disclose the details of the conviction is within the district court's discretion. *Id.*

Fleming argues that the fifth-degree possession conviction should have been introduced only as an unspecified felony, if at all, because its only relevance is an impermissible propensity inference. Not so. A conviction for any felony carries some impeachment value. *Id.* The comments to rule 609 resolve the tension between properly using felonies to impeach and improperly inviting juries to draw an impermissible inference that the defendant tends to commit certain crimes. *See* Minn. R. Evid. 609 cmt. The rules arm the district court with the discretion to exclude convictions when potential prejudice outweighs the probative value. The solution is not what Fleming implicitly suggests, which is to require that similar prior convictions may be referred to only generally. The district court analyzed both convictions applying the *Jones* factors and determined that the probative value outweighed the prejudicial effect of admitting the prior

9

convictions. It reasoned that sanitizing only one of the two convictions was necessary. This demonstrates the district court's proper exercise of its discretion.

Fleming also argues that the district court erred by failing to give the jury a limiting instruction that it may consider the prior convictions only for impeachment and not as evidence that Fleming was predisposed to commit drug crimes. Because Fleming did not request a limiting instruction during trial, we review only for plain error. *State v. Taylor*, 869 N.W.2d 1, 17 (Minn. 2015). Fleming must show that the district court committed an error, that is plain, and that the error affected his substantial rights. *Id.* at 15. We will then reverse only if the error seriously affects the fairness, integrity, or public reputation of the proceedings. *Id.*

The supreme court in *Taylor* recognized that it had previously cautioned only that district courts *should* give limiting instructions for prior convictions even when not requested, but it held that failing to do so is not error. *Id.* at 18. The district court did not plainly err by not sua sponte instructing the jury on how it should consider Fleming's prior convictions.

### III

Fleming argues that the prosecutor committed misconduct by asking S.R.A. how much he was paid to testify. His defense counsel did not object to the question, and therefore we review under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 296 (Minn. 2006). The appellant must identify an error and show that the error was plain. *Id.* at 302. If he does, the burden shifts to the state to show that the error did not prejudice the appellant's substantial rights. *Id.* If the state fails to make this showing, we

10

decide whether ensuring fairness and integrity in judicial proceedings requires correcting the error. *Id.*

Fleming argues that the prosecutor had no good-faith reason to ask S.R.A. whether he was being paid to testify. To the extent he is arguing that the question sought irrelevant evidence, he is wrong. Cross-examination is the principal way a witness's credibility and the truth of his statements are tested. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974). And one important purpose of cross-examination is to expose a witness's biases or motives for testifying. *State v. Ferguson*, 742 N.W.2d 651, 656 (Minn. 2007). Whether a witness believes he will be financially rewarded for his testimony therefore bears on his credibility, and witness credibility is always at issue. And even if asking whether a witness is being paid for his testimony sought categorically inadmissible evidence, Fleming was not harmed by the question because the witness's unequivocal and uncontested answer established that he was not being paid.

Fleming maintains that the question misleadingly insinuated the existence of evidence. He relies on three cases for the proposition that the prosecutor committed reversible error because "[m]erely asking the question . . . planted [the] possibility in the jurors' minds" that S.R.A. was being paid when the prosecutor had no good-faith reason to believe he was being paid. We do not read the cases that way. Each raises either a challenge to a prosecutor's questions that elicited inadmissible evidence or a challenge to a prosecutor's question that itself implied inadmissible evidence by an insinuation that was not corrected by the witness's answers. The cases therefore do not go far enough to support

11

Fleming's argument challenging the *admissible* and clearly *nonprejudicial* answer here—
"I didn't get paid nothing."

The first case Fleming relies on is *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). In *Strommen*, the prosecutor asked the arresting officer whether he knew the defendant by name based on the defendant's prior involvement with the police. 648 N.W.2d at 687. The officer replied, "Oh, yes, I know who he is," and the officer verified that he knew the defendant "[f]rom, like you say, prior contacts and incidents" with police. *Id*. at 685. The supreme court saw the question as eliciting irrelevant, prejudicial evidence that was otherwise inadmissible. *Id.* at 688. By contrast, the prosecutor here asked S.R.A. "how much" he was paid for his testimony, to which S.R.A. answered, "nothing." Whether or not the question was proper, the uncontested answer favored Fleming and prevented the jury from supposing that S.R.A. was in fact paid for his testimony.

The next case Fleming relies on is *State v. Currie*, 267 Minn. 294, 126 N.W.2d 389, (1964). The prosecutor in *Currie* cross-examined a defense witness asking whether she knew two named individuals, to which the witness said, "No." *Id.* at 299, 126 N.W.2d at 393. The prosecutor then introduced inadmissible evidence by dressing up a highly prejudicial statement as a question, saying, "You know that [the defendant's] done time with the two of them, don't you?" *Id.* at 299, 126 N.W.2d at 394. The supreme court saw the last "question" as error because "[t]he language used by the prosecutor [was] open to all kinds of prejudicial inferences." *Id.* at 302, 126 N.W. 2d at 395. The court reasoned, "[I]t is obvious that the effect of the question was to impugn the character of defendant . . . . No showing was made as to whether she supposedly had been convicted of a felony, a

violation of the city ordinance, or what; and there was no attempt to make such showing." *Id.* at 301, 126 N.W.2d at 395. Here, again by contrast, the prosecutor's question did not invite the witness to give inadmissible testimony, and the witness's answer disposed of any errant implication.

In the third and earliest case that Fleming relies on, *Michelson v. United States*, the United States Supreme Court dealt with a question the prosecutor asked four witnesses: "Did you ever hear that on October 11th, 1920, the defendant, Solomon Michelson, was arrested for receiving stolen goods?" 335 U.S. 469, 472, 69 S. Ct. 213, 216 (1948). None of the witnesses had ever heard of the fact implied by the prosecutor's question. *Id.* at 472, 69 S. Ct. at 216. And like the improper prosecution questions the *Currie* and *Strommen* courts would later address, the implied fact was prejudicial and otherwise inadmissible. *Id.* at 472, 484, 69 S. Ct. at 216, 223. This case would be similar to *Michelson* if the prosecutor here had asked some other witness, for example, "Did you know that three days ago Mr. Fleming's attorney handed S.R.A. $250 in cash for his testimony today?" In that situation, the question implies a specific prejudicial fact that the jury would suppose is true regardless of how the witness answers. A question like that can be justified only if the prosecutor has a good-faith belief both that the implied fact itself constitutes admissible evidence and that admissible evidence is available to prove the implication. For the same reasons that this case does not resemble *Currie* and *Strommen*, it does not resemble *Michelson*.

Asking the witness how much he was paid for his testimony invited S.R.A. to answer in a way that prevented any false implication from surviving the exchange. We add that, although we have analyzed the prosecutor's question as it was presented to us in the

form of a straightforward inquiry, there is another way one might interpret the question. Transcripts reveal *what* words were said, not *how* the words were said. It is plausible under the circumstances here that the prosecutor did not actually intend to inquire whether S.R.A. was paid and that this was apparent to the listening jury; the prosecutor might instead have intended the question to be a rhetorical barb, pointing out with a tinge of sarcasm not that S.R.A. might have been paid for his testimony, but that his testimony was so apparently unbelievable that only payment could explain it. The transcript cannot reveal inflection, and so the tone of any courtroom theatrics is lost to us. But taking the issue as it has been presented, we hold that the prosecutor did not commit misconduct by inquiring about the witness's potential bias through payment for his testimony, and even if he had, the witness's answer foreclosed the implication and prevented any prejudice.

**IV**

Fleming argues that his trial counsel's failure to request a limiting instruction and to object to the payment-for-testimony question constituted ineffective assistance of counsel. We are unconvinced. To succeed on this claim, Fleming must show that the representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of his trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984). An attorney must exercise "the customary skills and diligence" of a reasonably competent attorney under similar circumstances. *State v. Gustafson*, 610 N.W.2d 314, 320 (Minn. 2000). A strong presumption exists that an attorney's performance falls within a wide range of reasonable professional assistance. *Id.*

14

The state argues both alleged deficiencies were not unreasonable and were instead trial strategy. The supreme court has said that failure to request a limiting instruction for rule 609 impeachment is sometimes a matter of trial strategy. *Taylor*, 869 N.W.2d at 17 n.8. We can imagine several strategic reasons why trial counsel did not object to the payment-for-testimony question. For example, if S.R.A.'s courtroom demeanor made his testimony appear particularly incredible and the prosecutor's question was, as we have suggested, more of a sarcastic, rhetorical jab at the testimony, Fleming's attorney might reasonably have chosen not to defend S.R.A. Again, the transcript cannot tell us all we need to know on that possibility. If the question seemed instead to be a serious inquiry, by objecting to it Fleming's attorney would both call attention to the question and invite the jury to wonder if he feared the answer. Objecting might also have left the question unanswered, leaving the jury to believe the worst. He might have reasoned that S.R.A. could manage to parry the question himself with a solid answer, which he apparently provided. Perhaps Fleming's attorney doubted that he had a sound, legal objection. Fleming has failed to carry his burden to show his counsel's assistance was unreasonable.

Fleming's arguments in his pro se supplemental brief do not merit further discussion. Many of the arguments address issues decided in his prior appeal. We will not reexamine these claims, relying on the law-of-the-case doctrine. *See State v. Bailey*, 732 N.W.2d 612, 624 (Minn. 2007). Fleming also argues that his former appellate attorney gave constitutionally deficient representation by failing to file a cross-appeal under Minnesota Rule of Criminal Procedure 28.04, subdivision 3, which allows a defendant who is

responding to the state's appeal of a pretrial ruling to challenge any adverse pretrial order. But he points us to no adverse pretrial order that he might have challenged.

**Affirmed.**